**Dan J. ROBBENNOLT, Appellant,**

v.

**SNAP–ON TOOLS CORPORATION, Appellee.**

No. 95–179.

Supreme Court of Iowa.

Oct. 23, 1996.

Rehearing Denied Nov. 18, 1996.

Mark S. Soldat, Algona, for appellant.

Joseph M. Barron of Peddicord, Wharton, Thune & Spencer, P.C., Des Moines, for appellee.

PER CURIAM.

This case comes to us on further review of the decision of the Iowa Court of Appeals. We vacate the decision of the court of appeals and affirm in part, reverse in part, and remand the district court decision for further proceedings.

## I. *Factual and Procedural Background*

On August 17, 1990, Dan Robbennolt received a severe cut to his right third finger while working for Snap–On Tools Corporation (Snap–On). He was treated for the injury and was off work for two days. Robbennolt continued to experience problems with the finger, causing additional absences from work and leading to additional corrective surgeries which failed to resolve the problems. On October 3, an extensor tendon reefing and pinning was performed. Robbennolt returned to work on November 19. On January 11, 1991, surgery was performed on the finger. Robbennolt was released to work and did return to work on February 25. On March 11, a fusion of the PIP joint of the injured finger was performed. Robbennolt was released to return to work and did return to work on April 25. On July 3, a refusion of the PIP joint with a bone graft was performed. This was unsuccessful and, on August 14, the right third finger was amputated. Robbennolt was released to return to work without restriction on Septem-

ber 9. On September 23, his physician opined that Robbennolt had a ninety-four percent permanent partial disability (PPD) of the right finger. In January 1992, he filed a claim for benefits, interest, and penalty benefits with the Iowa Industrial Commissioner (commissioner).

Robbennolt continued to experience pain in his hand. A ray resection surgery was performed on November 18, 1992 to alleviate the pain. Although Robbennolt complained that he has lost grip strength in his right hand and suffers from fatigue due to the loss of his finger, the treating physician reported that he made a good recovery from the ray resection surgery. After April 1993, no work restrictions were placed on Robbennolt and he was permitted to work overtime. On June 30, the physician handling the ray resection surgery gave Robbennolt a 100% permanent partial impairment rating regarding the right third finger, which translated into a twenty percent permanent partial impairment of his right hand as a result of the loss of the finger. Robbennolt claims that this rating does not take into account the pain he was suffering. Robbennolt also claims that he was not able to perform all the tasks he was able to do with his hand prior to the injury, and that the injury affected his right arm.

Initially, Snap–On paid workers' compensation benefits using a rate that did not include the overtime Robbennolt had been working. Snap–On, however, admitted the rate was incorrect, and ultimately applied the correct rate. In his claim with the commissioner, Robbennolt claims he is entitled to additional PPD benefits from his finger injury that caused a permanent disability to his right arm, that he should receive additional interest for Snap–On's failure to make timely payments of compensation, and that he should receive penalty awards under Iowa Code section 86.13 (1993) for alleged unreasonable delay in payment of benefits.

On January 18, 1994, the deputy industrial commissioner (deputy) entered a decision determining Robbennolt had a twenty percent permanent impairment to his right hand due to the loss of his finger and that he was entitled to interest on PPD payments due and not timely made on or after June 9, 1993. This is the date the deputy determined that Robbennolt reached maximum medical improvement and that his healing period terminated. The deputy also determined Snap–On must pay additional healing period benefits and temporary partial disability benefits to Robbennolt. However, no interest was allowed on these unpaid benefits. The deputy refused to assess interest under Iowa Code section 85.30 as requested by Robbennolt and also refused to impose a penalty under Iowa Code section 86.13 for unreasonable delay or denial of benefits. On June 29, 1994, the commissioner affirmed the decision of the deputy. The commissioner assessed the cost of the appeal to Robbennolt and required Snap–On to pay all other costs.

Robbennolt filed a petition for judicial review on July 5, 1994, challenging the commissioner's decision. The district court entered a ruling on January 3, 1995, essentially affirming the commissioner's decision. The court rejected Robbennolt's claim that the commissioner neglected to determine whether there was a permanent disability to Robbennolt's right arm, concluding that the commissioner considered Robbennolt's argument and rejected it. The court determined that there was substantial evidence to support the commissioner's determination regarding the extent of Robbennolt's impairment. The court also concluded that there was a sufficient basis for the commissioner's decision limiting Robbennolt's hand impairment to twenty percent based on the medical rating. The court further concluded that the compensation payments were paid within the time required by Iowa Code section 85.30. The court found Robbennolt's PPD payments accrued on September 23, 1991 rather than on June 9, 1993, the date set by the commissioner. However, the court noted that Snap–On paid Robbennolt for the original impairment rating at the time the rating was given in September 1991, and that any payment at an incorrect rate was corrected after the June 1993 impairment rating. The court determined that Robbennolt was not entitled to additional interest. The court also determined that Robbennolt was not entitled to penalties under Iowa Code section 86.13.

The court further determined that the commissioner did not abuse his discretion in taxing costs of the unsuccessful appeal to Robbennolt. The court taxed the costs of the judicial review action to Robbennolt.

Robbennolt filed a timely notice of appeal. We transferred the appeal to the court of appeals. *See* Iowa R.App.P. 402. The court of appeals affirmed the district court's ruling. We granted Robbennolt's application for further review. Iowa R.App.P. 402.

## II. *Scope of Review*

Judicial review of the actions of an administrative agency is governed by the standards of Iowa Code section 17A.19(8). *Mercy Health Ctr. v. State Health Facilities Council*, 360 N.W.2d 808, 811 (Iowa 1985). The court acts in an appellate capacity by reviewing the agency's decision solely to correct any errors of law. *Dubuque Community Sch. Dist. v. Public Employment Relations Bd.*, 424 N.W.2d 427, 430 (Iowa 1988). The agency's decision is final if it is supported by substantial evidence and is correct in its conclusions of law. *Heatherly v. Iowa Dep't of Job Serv.*, 397 N.W.2d 670, 670 (Iowa 1986). The possibility of drawing two inconsistent conclusions from the same evidence does not prevent the agency's decision from being supported by substantial evidence. *Henry v. Iowa Dep't of Job Serv.*, 391 N.W.2d 731, 734 (Iowa App.1986).

## III. *Review Determination*

### A. Disability Determination

Robbennolt claims error in the commissioner's decision in not assigning more than a disability of twenty percent scheduled member impairment of his right hand. He asserts he has at least an uncontroverted forty percent hand loss and forty percent arm loss. He argues that the decision is not sufficiently detailed to show the path taken through conflicting evidence. He believes the commissioner "secretly adopted the AMA Guides to evaluation of permanent impairment rating without considering other evidence." The other evidence is Robbennolt's testimony of pain and numbness in the thumb, web, palm, graft site, and forearm.

He states that the guides also offer no measurement of loss of hand grip and pinch strength or of arm-lifting strength. In the absence of countering evidence to negate, he believes a higher disability rating than twenty percent is mandated. He says this is because otherwise uncontroverted lay and subjective evidence of functional impairment is disregarded.

Snap–On argues that there is a great deal of evidence that Robbennolt has sustained very little impairment of his activities either at work or elsewhere. Snap–On points to the recitation by the commissioner of Robbennolt's problems both as recited by the examining doctor, by Robbennolt himself, and by a counselor who helped him on unresolved grief as a result of the loss of his finger.

We note that the deputy detailed the loss of pinch strength, pain, functional use of his hand, and other decreased use experienced by Robbennolt. The deputy then stated:

> It is expressly found that claimant has a decreased ability to lift with the right upper extremity as well as decreased grip and pinch strength in the right hand. These factors are sufficient to demonstrate that claimant's overall impairment is an impairment to the hand and not an impairment to the right third finger only.

Regarding the emotional trauma the deputy said:

> It is expressly found that claimant's emotional concerns and reactions as presented in this record were part of the normal sequela of recovery from the significant injury. It is further expressly found that these conditions did not rise to the level of an independent debilitating psychological condition such that claimant's impairment is to the body as a whole and not to the hand.

Robbennolt complains that there is virtually no rationale for how the commissioner deduced that he had sustained only a twenty percent loss of permanent function in the right hand. He says the commissioner noted, but did not analyze, the findings of functional capacity evaluations. He says the commissioner also noted, but did not analyze,

the medical knowledge that a ray resection significantly lessened grip strength in the hand. He questioned that the twenty percent disability just happened to be the same percentage as the only medical rating percentage in evidence.

Snap–On points out accurately that there is no medical opinion in this case that Robbennolt has a permanent functional impairment beyond the twenty percent. The AMA guides, relied on by the examining doctor, have been specifically adopted as a guideline for determining PPD. Snap–On also argues that there is no rule of law that requires an award greater than the impairment rating determined by the AMA guidelines where a claimant makes complaints of pain or fatigue.

■ We believe that Snap–On's argument on this point is sound. Where the commissioner has recognized and written about Robbennolt's condition and deficiencies, as was done here, the evidence is sufficient to support a reasonable conclusion reached. Here, the conclusion of the deputy, commissioner, district court, and court of appeals was that a twenty percent award was appropriate, viewing the record as a whole. *See ALCOA v. Employment Appeal Bd.,* 449 N.W.2d 391, 394 (Iowa 1989). Robbennolt's argument is actually that the commissioner did not properly assess the evidence. On judicial review of agency action, the court's review is not de novo. The court must not reassess the weight of the evidence because the weight of the evidence remains within the agency's exclusive domain. *Burns v. Board of Nursing,* 495 N.W.2d 698, 699 (Iowa 1993).

Robbennolt insists that the commissioner should be directed to consider and weigh any impairment beyond that which is measurable under the AMA guidelines, and if rejected, "to detail the reasons for rejecting each of the various facts and evidence advanced by Robbennolt in favor of the advanced percentages." He quotes the examining doctor's opinion that the AMA guidelines do not attempt to measure the medically immeasurable. Pain is not a feature that is utilized in determining impairment because medical impairment is only dealing with the medically measurable loss of function. For this reason, Robbennolt insists that the medically im-

measurable must be quantified by the commissioner in much the same way a jury quantifies pain and suffering and other intangible losses.

■ There is no requirement in the statutes or our case law commanding the commissioner to validate the agency's decisions with precise detail and specificity. If this was required, the agency's efficiency and capacity to expedite decisions for the benefit of the injured worker would collapse under the dead weight of detail. Robbennolt's argument ignores our well-recognized rule that the agency's decision is final if supported by substantial evidence and if correct in its conclusions of law. *Heatherly,* 397 N.W.2d at 670. It is also contra to the purpose of our review as set out by the legislature in section 17A.19(8). We affirm the district court decision on this issue.

### B. Interest Computations

■ Robbennolt challenges the court's allowance and computation of interest. To compute interest on compensation payments, we must determine (1) the amount of weekly compensation, (2) the date the compensation begins, (3) the date the weekly compensation is due, (4) when payment is made, and (5) how partial compensation payments are applied.

Although Snap–On initially made PPD compensation payments of $286.10 per week in September 1991 after Robbennolt's finger was amputated, Snap–On agrees the correct amount of the weekly compensation is $330.64 per week.

We look to the statutory provisions for determining when healing period, PPD compensation, and all other workers' compensation begins and when it is due. Iowa Code section 85.34 provides in part:

1. *Healing Period.* If an employee has suffered a personal injury causing permanent partial disability for which compensation is payable . . . , the employer shall pay to the employee compensation for a healing period . . . beginning on the date of injury, and until the employee has returned to work. . . .

*2. Permanent Partial Disabilities.* Compensation for permanent partial disability shall begin at the termination of the healing period provided in subsection 1 [of this section].

It is clear PPD payments begin at the termination of the healing period. *Teel v. McCord*, 394 N.W.2d 405, 407 (Iowa 1986).

Iowa Code section 85.32 provides in part: "Except as to injuries resulting in permanent partial disability, compensation shall begin on the fourth day of disability after the injury."

Our statutory provisions are quite specific as to when temporary or PPD compensation begins, *see* sections 85.32–.34, but are not as clear as to when the payment of compensation is due. Section 85.30 provides:

Compensation payments shall be made each week beginning on the eleventh day after the injury, and each week thereafter during the period for which compensation is payable, and if not paid when due, there shall be added to the weekly compensation payments, interest at the rate provided in section 535.3 for court judgments and decrees.

When construing statutes, our goal is to ascertain and give effect to the intention of the legislature. *Harden v. State*, 434 N.W.2d 881, 884 (Iowa 1989). We seek a reasonable interpretation that will best effect the purpose of the statute and avoid an absurd result. *Id.* When more than one statute is pertinent to the inquiry, we consider the statutes together in an attempt to harmonize them. *Id.*

We conclude section 85.30 provides for an eleven-day grace period following the injury to allow an evaluation and investigation of the injury and a determination of the correct weekly compensation rate before the first compensation payment is due. If the required weekly compensation is timely paid at the end of the compensation week, no interest will be imposed. Likewise, if full payment of the weekly compensation is not made at the end of the compensation period, interest will be imposed. As an example, if Monday is the first day of the compensation week, full payment of the weekly compensation is due the following Monday.

In *Teel*, the employee received weekly healing period payments following his injury on February 4, 1974. These payments stopped after the employee returned to work on May 7. The employee received no PPD payments for more than one year. He later underwent further surgery and was unable to work. He received weekly payments for the various periods of time that he was unable to work, but he did not receive PPD compensation. In 1976, he petitioned for determination of his PPD benefits. The extent of his disability became known after his last operation in 1980. The commissioner awarded him 150 weeks of PPD compensation with interest to accrue from the date of the award in 1982. The district court reversed the ruling and held interest on the award accrued from the day he returned to work on May 7, 1974, excluding those weeks he received healing-period payments. *Teel*, 394 N.W.2d at 406. We affirmed the district court ruling. We acknowledged there was no question the employee suffered some disability as a result of his injuries. *Id.* at 407. We recognized the apparent purpose of section 85.30 was "to secure compensation for injured employees and their dependents at the earliest time." *Id.* (quoting *Farmers Elevator Co. v. Manning*, 286 N.W.2d 174, 180 (Iowa 1979)). We also stated:

Thus, the legislature could conclude that when *the extent* of a disability is unknown until after treatment, the employer should pay interest for the period between the termination of the healing period and the award. After all, the employer in effect is holding the employee's money, and presumably earning interest on it. By paying this amount back the employer is only returning money it does not rightfully own.

*Id.*

Robbennolt is entitled to healing period compensation from August 17, 1990, the date he received an injury resulting in PPD. He is entitled to PPD compensation payments at the termination of the healing period. The weekly PPD compensation payment is due at the end of the week for which compensation is being paid. If the weekly PPD payment is not made, interest is added to the compensation due. When an employ-

ee receives an injury that results in PPD, the employee is entitled to the PPD compensation for that injury. Although the extent of the disability may be unknown at the time of the injury, the employee is entitled to be fully compensated for the injury. If the compensation payments are not fully made, section 85.30 allows for recovery of interest to assure full compensation to the injured worker.

We next consider the issue as to when payments are made and how they are applied. In *Kiesecker v. Webster City Custom Meats, Inc.,* 528 N.W.2d 109, 112 (Iowa 1995), we held weekly compensation payments are "made" when they are mailed to the claimant, not when they are received. We later approved a district court order that weekly benefit payments should be considered paid when placed in the United States mail addressed to the claimant. *Thilges v. Snap–On Tools Corp.,* 531 N.W.2d 644, 644 (Iowa 1995). Here, the parties have stipulated as to the date the compensation checks were issued and the dates the checks were mailed to or delivered to Robbennolt. Based on our prior decisions, a check mailed directly to Robbennolt is considered paid on the date the check was mailed. As to a check that was delivered to him, the payment is "made" on the date of delivery. The employer may choose the manner of payment of workers' compensation.

We have recently clearly stated how compensation payments are allocated where interest is due. In *Christensen v. Snap–On Tools Corp.,* 554 N.W.2d 254 (Iowa 1996), we recognized our adherence to the United States rule regarding allocation of interest. We said:

> Under that rule, when partial payments are made they are allocated first toward the interest due. Any payment which exceeds the interest due is applied towards the judgment principal. Subsequent interest is to be computed on the remaining principal. We now adopt that rule regarding late payments in workers' compensation cases.

*Christensen,* 554 N.W.2d at 262.

■■■■ The commissioner has no discretion to ignore the statutory requirement that interest be added to the weekly compensation payment when compensation is payable but not fully paid when due. Neither the commissioner's finding that Snap–On "acted timely in assuring that payment of any liquidated compensation due claimant was made to claimant on a timely basis" or the district court's conclusion that "the record notes that payment was consistently made during the required period" is supported by the facts in the record. The assessment of a ten percent annual interest (current rate under section 535.3 as provided in section 85.30) is not a penalty; it merely provides full compensation to the worker. However, the imposition of interest may discourage delay in payment of benefits and encourage payment of full compensation to the injured employees and their dependents at the earliest time. Because the commissioner and court failed to award interest as provided by statute, we reverse the court with instructions to remand to the commissioner for the determination and allowance of interest in accordance with this opinion.

### C. Penalty Benefits

■■■■ Iowa Code section 86.13 provides in part:

> If a delay in commencement or termination of benefits occurs without reasonable or probable cause or excuse, the industrial commissioner shall award benefits in addition to those benefits payable under this chapter, or chapter 85, 85A, or 85B, up to fifty percent of the amount of benefits that were unreasonably delayed or denied.

This penalty provision was added to section 86.13 in 1982. Perhaps it was in response to our observation that "the need for an incentive to pay compensation is particularly acute in view of the delays which sometimes regrettably occur between the time of an employee's injury and final resolution of the claim." *Manning,* 286 N.W.2d at 180. We construed the statutory penalty provision in *Christensen.* The application of the penalty provision does not turn on the length of the delay in making the correct compensation payment. Any delay without reasonable excuse entitles the employee to benefits in some amount. "In the absence of a reason-

able excuse for a delay, penalty benefits are mandatory. Only the amount is within the discretion of the commissioner." *Christensen*, 554 N.W.2d at 261. The purpose or goal of the statute is both punishment and deterrence.

■ Snap–On made compensation payments in 1991 based on an incorrect preinjury wage base. After Robbennolt retained counsel in January 1992, his counsel requested wage-base information. After receiving the information, counsel requested Snap–On use the correct $330.64 weekly rate. In his letter to Snap–On, counsel stated "Given the information of overtime and unpaid absences readily available to your client, this incorrect calculation seems quite inexcusable." Receiving no response, counsel wrote eight letters between March and December of 1992. The letters warned Snap–On of possible penalty consequences of the delay and of counsel's intent to seek section 86.13 penalties. Snap–On made no response in 1992 to these letters. On January 2, 1993, counsel received a response from Snap–On acknowledging that Robbennolt was compensated at in incorrect rate and that the correct rate was $330.64 per week. In January, Snap–On paid the additional compensation of past amounts owed. Snap–On offered no excuse for the delay in making the proper compensation payments.

At the hearing before the deputy, counsel for Robbennolt asked that the penalty percentage be fifty percent, the maximum allowed under the statute. Counsel urged:

> Snap–On clearly compounded its inexcusable errors in rate calculation and interest nonpayment with a year's indifference, followed by further inexcusable errors in computing back interest, still uncorrected at the hearing date. Moreover, this is not the first time Snap–On has been guilty of inexcusable delay.

(citing four cases where the commissioner had imposed statutory penalties against Snap–On).

The deputy found the rate error "appears to have been inadvertent." On appeal, the commissioner "excused" Snap–On's calculation of the claimant's compensation even though Snap–On had offered no excuse for the miscalculation and delay. The commissioner found Snap–On "timely corrected the rate error once claimant's overtime hours and resulting additional gross weekly wages were communicated to them." The commissioner then held:

> While it may have been a negligent act on the employer's part, calculation based on the standard hourly work week and the claimant's hourly wage cannot be considered to have been so unreasonable as to be considered denial or delay in compensation without reasonable or probable cause or excuse.

On judicial review, the district court stated "This court has reviewed the commissioner's findings with regard to penalties and finds that it should be affirmed."

■ Snap–On urges that section 86.13 provides for a penalty in the event of delay in "commencement" or "termination" of benefits, not in the event of underpayment of benefits. Because there was no delay in the commencement of benefits, Snap–On argues no penalty can be imposed. Snap–On also urges that delay in payment of interest does not give rise to a statutory penalty. *See Weishaar v. Snap–On Tools Corp.*, 506 N.W.2d 786, 791 (Iowa App.1993).

Certainly the clear purpose of section 86.13 is to penalize employers who do not timely pay workers' compensation benefits. Included among the circumstances under which the statute was enacted was the recognition that too often employees were not receiving the full amount of the compensation payable to them under the statute. If we were to construe the statute to permit the avoidance of a penalty if *any* amount of compensation benefits are paid, the purpose of the penalty statute would be frustrated. For these reasons, we conclude section 86.13 is applicable when payment of compensation is not timely made or when the full amount of compensation is not paid.

As stated in *Christensen* "the focus is on whether timely payment of the benefits due was made and if not, whether there was a reasonable excuse for the failure to make timely payment of the amount owed." *Christensen*, 554 N.W.2d at 260. We required the

commissioner to award penalty benefits for the employer's delay in making PPD payments at the proper rate and its failure to pay the full amount of back benefits due once it commenced PPD payments. *Id.* at 261.

■ We reverse the court's ruling on penalties and order the district court to remand to the commissioner for determination of the amount of the penalty to be awarded. In determining the amount of the penalty, the commissioner shall consider such factors as the length of the delay, the number of the delays, the information available to the employer regarding the employee's injuries and wages, and the prior penalties imposed against the employer under section 86.13.

### D. Assessment of Costs

Costs of the hearing before the deputy industrial commissioner were assessed equally against the parties. On appeal, the commissioner assessed the appeal costs against Robbennolt and other costs against Snap–On. The appeal costs include the significant costs of a hearing transcript. *See* Iowa Code § 86.24(4). The district court affirmed the commissioner and taxed the judicial review cost to Robbennolt.

We review the district court's and industrial commissioner's action in taxing costs for an abuse of discretion. Iowa Code §§ 86.32, .40. When reviewing the taxation of costs, we consider the success of the applicant on the issues raised on appeal as shown by the record.

We reverse the court's ruling approving the assessment of costs by the commissioner. We order the court to remand the assessment of costs to the commissioner for redetermination of the costs. Costs in the district court and on appeal are assessed seventy-five percent to Snap–On and twenty-five percent to Robbennolt.

### IV. *Disposition*

We affirm the district court's disability determination. We reverse the district court's decision regarding the allowance of interest, penalty, and costs. We remand to the district court for referral to the commissioner for reconsideration and redetermina-

tion of interest, penalties, and costs in accordance with this opinion.

**DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**