Charles Dana DEPPE, Petitioner–
Appellee/Cross–Appellant,

v.

IOWA DEPARTMENT OF TRANS-
PORTATION, MOTOR VEHICLE DI-
VISION,          Respondent–Appel-
lant/Cross–Appellee.

No. 00–0993.

Court of Appeals of Iowa.

April 10, 2002.

Thomas J. Miller, Attorney General, David A. Ferree, Special Assistant Attorney General, and Mark Hunacek, Assistant Attorney General, for appellant.

Douglas Cook of Brekken, Deppe, Wynia, Cook, Hyland, P.C., Jewell, for appellee.

Heard by MAHAN, P.J., and MILLER and HECHT, JJ.

HECHT, J.

The Iowa Department of Transportation (IDOT) appeals from the district court's ruling on judicial review holding Charles Deppe, whose license was revoked by the IDOT as a result of a deferred judgment for operating while intoxicated, is eligible to receive a temporary restricted license without installation of an ignition interlock device. Deppe cross-appeals from the district court's ruling sustaining the revocation of his driver's license pursuant to Iowa Code section 321J.4(3) (1999). We affirm.

## I. Background Facts and Proceedings.

On February 5, 1999, Deppe was arrested for operating while intoxicated in violation of Iowa Code section 321J.2. The arresting officer requested that Deppe submit to a breath test. Deppe consented and the test revealed a blood alcohol concentration of 0.112. Pursuant to section 321J.12, the officer served Deppe with notice that his privilege to operate a motor vehicle in Iowa would be revoked for a period of 180 days, effective ten days from the date of the notice. Deppe filed an appeal with the IDOT. The revocation was stayed pending the outcome of a hearing before an administrative law judge. The administrative law judge, and the IDOT on administrative appeal, ruled adversely to Deppe and sustained the revocation. The IDOT notified Deppe his license to operate would be revoked effective May 30, 1999.

On May 27, 1999, the district court, in the parallel criminal prosecution for operating while intoxicated, issued an order suppressing chemical test evidence. Deppe filed a Petition to Reopen with the IDOT, citing the suppression of evidence in the criminal case. On June 21, 1999, the IDOT granted the petition and notified Deppe the revocation of his motor vehicle privileges had been rescinded.

On September 13, 1999, Deppe was granted a deferred judgment in the criminal case on his written plea of guilty. On October 4, 1999, the IDOT notified Deppe his license was revoked pursuant to Iowa Code section 321J.4(3) for a period of ninety days, effective ten days following receipt of the notice. The notice was amended to provide for revocation until December 27, 1999, reflecting credit for time served under the prior revocation. On November 8, 1999, Deppe filed a petition for judicial review. The district court sustained Deppe's license revocation pursuant to section 321J.4(3) and determined he was eligible for a temporary restricted license without the installation of an ignition interlock device.

On appeal, the IDOT contends the district court erred in concluding Deppe is eligible for a temporary restricted license without the installation of an ignition interlock device. Deppe cross-appeals from the district court's ruling sustaining the IDOT's revocation under section 321J.4(3).

## II. Scope of Review.

Judicial review of the actions of an administrative agency is governed by the standards of Iowa Code section 17A.19. *Robbennolt v. Snap–On Tools Corp.*, 555

N.W.2d 229, 233 (Iowa 1996). The agency's decision is final if it is supported by substantial evidence and is correct in its conclusions of law. *Id.* We review issues involving the interpretation of a statute for the correction of errors at law. Iowa R.App. P. 6.4; *State v. Schultz,* 604 N.W.2d 60, 62 (Iowa 1999). We are not bound by the district court's application of legal principles. *Schultz,* 604 N.W.2d at 62.

## III. Discussion.

### A. Revocation of Deppe's License.

■ We begin our analysis with Deppe's contention on cross-appeal that the district court erred by sustaining his driver's license revocation.

Iowa Code section 321J.4(3) provides in pertinent part:

> If the court defers judgment pursuant to section 907.3 for a violation of section 321J.2, and if the defendant's driver's license or nonresident operating privilege has not been revoked under section 321J.9 or 321J.12, or has not otherwise been revoked for the occurrence from which the arrest arose, the department shall revoke the defendant's driver's license or nonresident operating privilege for a period of not less than thirty days nor more than ninety days.

Iowa Code § 321J.4(3). Deppe argues section 321J.4(3) gives the IDOT authority to revoke a license, provided that the IDOT has not already revoked the defendant's license under sections 321J.9 (refusal to submit to test) or 321J.12 (test result revocation). Deppe contends the IDOT revoked his driver's license on May 30, 1999 for twenty-two days under section 321J.12, thereby precluding a subsequent revocation on the same offense. The IDOT argues the May 30, 1999 revocation was rescinded and did not preclude the

agency from serving a subsequent notice of revocation after Deppe pled guilty to a violation of section 321J.2.

Both parties rely on the Iowa Supreme Court's decision in *Pietig v. Iowa Dep't of Transp.,* 385 N.W.2d 251 (Iowa 1986). In *Pietig,* the court considered the meaning of the word "revoked" in a statute comparable to section 321J.4(3). *Id.* at 252–53. The licensee, Pietig, was arrested for operating an automobile while intoxicated. *Id.* at 252. He relinquished his license to the arresting officer, who issued Pietig a temporary license permit. *Id.* The IDOT returned Pietig's license when a representative of the agency failed to appear at the administrative hearing to contest Pietig's administrative appeal. *Id.*

Following a guilty plea in his criminal proceedings, the IDOT revoked Pietig's license. *Pietig,* 385 N.W.2d at 252. Pietig petitioned for judicial review contending he had been previously revoked and was therefore exempt from a subsequent revocation for the same offense. *Id.* The court disagreed and defined revocation as "the termination of the licensee's authority to drive." *Id.* at 253. The court held Pietig's license was not revoked because he never lost his authority to drive under the administrative revocation due to the immediate issuance of the temporary license. *Id.*

In reaching its conclusion, our supreme court noted it must construe the operating while intoxicated statute "in a practical manner." *Pietig,* 385 N.W.2d at 253. The court further noted the statutory purpose in requiring revocation of driving privileges for those convicted of drunk driving is to remove "from the highways 'those drivers who have endangered life and property.'" *Id.* (quoting *Crow v. Shaeffer,* 199 N.W.2d 45, 47 (Iowa 1972)). Finally, the court emphasized it could "discern no legislative intent to allow drivers convicted

[for driving while intoxicated] to escape revocation procedures." *Id.*

Applying the court's rationale in *Pietig*, Deppe argues his license was "revoked" for purposes of section 321J.4(3) because he lost the authority to drive for twenty-two days prior to the IDOT's rescission of the revocation. We disagree. We find Deppe's argument at odds with our supreme court's analysis in *Pietig*. Deppe's interpretation of the statute would clearly permit some licensees to avoid the minimum period of revocation contemplated by section 321J.4(3). In particular, a licensee whose driving privileges have been terminated for only one day before administrative rescission of the revocation would be immunized against future revocation based on a conviction for violation of section 321J.2 arising from the same transaction or occurrence.

■ We find the legislature, in an attempt to remove drunk drivers from the highways, intended a revocation for purposes of section 321J.4(3) to mean a termination of driving privileges for at least the minimum statutory period.[1] We hold that a licensee who suffers a termination of driving privileges for less than the minimum statutory period has not suffered a revocation for the purposes of section 321J.4(3). Because Deppe's driving privileges were terminated for only twenty-two days, his license was not "revoked" for purposes of the statute. Accordingly, the district court properly sustained his revocation under section 321J.4(3).

### B. Installation of Ignition Interlock Device.

■ The IDOT contends the district court erred in concluding Deppe is eligible for a temporary restricted license ("TRL") without the installation of an ignition interlock device. Moreover, the IDOT contends a person convicted of a violation of section 321J.2 may not receive a TRL unless they install an ignition interlock device. Deppe asserts Chapter 321J mandates installation of an interlock as a condition of issuance of a TRL to repeat offenders; however, a licensee under revocation following imposition of a deferred judgment for his first violation of section 321J.2 is eligible to receive a TRL without installation of an interlock.

When confronted with an issue involving the interpretation of a statute, we begin with the principles of statutory construction. *Doe v. Ray*, 251 N.W.2d 496, 500 (Iowa 1977). The polestar of statutory interpretation is the intent of the legislature. *Schultz*, 604 N.W.2d at 62. We focus not only upon the language of the statute, but also its underlying purpose and the consequences stemming from different interpretations. *State v. Carpenter*, 616 N.W.2d 540, 542 (Iowa 2000). If more than one statute relating to the subject matter is relevant to our inquiry, we consider them together in an effort to harmonize them. *Id.* We will not construe the language of a statute in a manner that will produce an absurd or impractical result. *Schultz*, 604 N.W.2d at 62. We follow the rule that "legislative intent is 'expressed by omission as well as by inclusion.'" *Wiebenga v. Iowa Dep't of Transp.*, 530 N.W.2d 732, 735 (Iowa 1995) (quoting *Barnes v. Iowa Dep't of Transp.*, 385 N.W.2d 260, 263 (Iowa 1986)). We presume the legislature intends a reasonable result when it enacts a statute.

---

1. Although section 321J.4(3) requires a revocation of at least 30 but not more than 90 days, the IDOT asserts it routinely imposes revocations of 90 days under this statutory authority.

*State v. Pace,* 602 N.W.2d 764, 772 (Iowa 1999).

> Iowa Code section 321J.20(6) provides:
>
> Following certain minimum periods of ineligibility, a temporary restricted license under this section shall not be issued until such time as the applicant installs an ignition interlock device ... *in accordance with section 321J.4.*

Iowa Code § 321J.20(6) (emphasis added). Iowa Code section 321J.4 establishes minimum periods of license revocation for convictions under section 321J.2, provides minimum periods of ineligibility for temporary restricted licenses, and expressly mandates installation of an ignition interlock as a condition of issuance of a temporary restricted license to repeat offenders. *See* Iowa Code § 321J.4. Iowa Code section 321J.4(2) provides in relevant part:

> If a defendant is convicted of a violation of section 321J.2 ... the department shall revoke the defendant's driver's license or nonresident operating privilege for two years *if the defendant has had a previous conviction or revocation under this chapter.* The defendant shall not be eligible for any temporary restricted license for one year after the effective date of revocation. The defendant shall be ordered to install an ignition interlock device of a type approved by the commissioner of public safety on all vehicles owned by the defendant if the defendant seeks a temporary restricted license at the end of the minimum period of ineligibility. A temporary restricted license shall not be granted by the department until the defendant installs the ignition interlock device.

Iowa Code § 321J.4(2) (emphasis added). Iowa Code section 312J.4(4) similarly provides:

> Upon a plea or verdict of guilty of a *third or subsequent violation of section 321J.2* ... [t]he defendant shall be ordered to install an ignition interlock device of a type approved by the commissioner of public safety on all vehicles owned by the defendant if the defendant seeks a temporary restricted license at the end of the minimum period of ineligibility. A temporary restricted license shall not be granted by the department until the defendant installs the ignition interlock device.

Iowa Code § 321J.4(4) (emphasis added).

Deppe was granted a deferred judgment.[2] Accordingly, we turn our attention to Iowa Code section 321J.4(3) which provides in relevant part:

> If the court defers judgment pursuant to section 907.3 for a violation of section 321J.2 ... [t]he defendant shall not be eligible for any temporary restricted license for at least thirty days after the effective date of the revocation if a test was obtained and for at least ninety days if a test was refused. If the defendant is under the age of twenty-one, the defendant shall not be eligible for a temporary restricted license for at least sixty days after the effective date of the revocation.

Iowa Code § 321J.4(3). The IDOT argues the district court misunderstood this section to authorize the issuance of a TRL. The IDOT contends the statute does not grant authority to issue such licenses, but is intended only to preclude issuance of a

---

**2.** Deppe's eligibility for a deferred judgment confirms that (1) his alcohol concentration did not exceed .15; (2) he had no prior convictions, sentences or deferred judgments for violation of 321J.2 or similar statutes in other jurisdictions; (3) he did not refuse to submit to chemical testing in connection with the offense, and (4) his offense did not result in bodily injury to a third person. *See* Iowa Code § 321J.2 (3). The restrictions on access to a deferred judgment assure only the least culpable offenders will be eligible.

TRL to an offender before the expiration of the minimum period of ineligibility after a deferred judgment is granted. The IDOT concedes Iowa Code section 321J.20 would entitle Deppe to a temporary restricted license after the minimum period of ineligibility, but only if he installs an ignition interlock device.

Deppe asserts the legislature intended to mandate the installation of an interlock device only for recidivists. He contrasts sections 321J.4(2) and (4), which expressly require an interlock as·a condition of issuance of a TRL to repeat offenders, with section 321J.4(3), which makes no reference to the device for an offender who is granted a deferred judgment. Deppe contends the omission of an express requirement of an interlock device in section 321J.4(3) clearly demonstrates the legislature's intent that a person who receives a deferred judgment for a violation of section 321J.2 is eligible for a temporary restricted license without installing an interlock device. We agree. We believe if the legislature had intended to require persons who receive deferred judgments to install interlocks, it would have specifically said so in section 321J.4(3), just as it did in sections 321J.4(2) and (4) when referring to repeat offenders.

Reading all relevant sections of Chapter 321J together, we conclude the legislature intended to only require the installation of interlocks for repeat offenders who seek a TRL. Section 321J.20 expressly prohibits issuance of a TRL "until ... the applicant installs an ignition interlock device ... *in accordance with section 321J.4.*" Iowa Code § 321J.20(6) (emphasis added). Section 321J.4 expressly requires interlocks for repeat offenders, but does not do so for defendants who receive deferred judgments. It is reasonable to believe the legislature intended to more severely restrict repeat offenders' access to temporary restricted licenses, not only by requiring longer periods of ineligibility, but also by requiring interlocks as a condition of issuance. Accordingly, we conclude the district court correctly ruled Deppe is eligible for a temporary restricted license without installation of an ignition interlock device.

**AFFIRMED.**