# IN THE COURT OF APPEALS OF IOWA

No. 15-1095
Filed July 27, 2016

**JULIE ANN REYNOLDS,**
　　　　Petitioner-Appellee/Cross-Appellant,

**vs.**

**ALGONA MANOR CARE CENTER and**
**CANON COCHRAN MANAGEMENT SERVICES, INC.,**
　　　　Respondents-Appellants/Cross-Appellees.
_____

　　　　Appeal from the Iowa District Court for Polk County, Arthur E. Gamble, Judge.


　　　　An employer appeals and an employee cross-appeals the district court's ruling on judicial review of a workers' compensation award. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**


　　　　Joni L. Ploeger and Stephen J Brown of Cutler Law Firm, P.C., West Des Moines, for appellants.

　　　　Mark S. Soldat of Soldat, Parrish-Sams & Gustafson, PLC, West Des Moines, for appellee.


　　　　Heard by Vogel, P.J., and Doyle and Bower, JJ.

**DOYLE, Judge.**

An employer and its workers' compensation administrator appeal from the district court's ruling on judicial review of a workers' compensation award with respect to the award of certain medical expenses, the interest due on temporary benefits, and the award of penalty benefits and costs. On cross-appeal, the claimant argues her spouse is entitled to reimbursement for wages lost while transporting the claimant to medical appointments. Upon our review, we reverse the portion of the judicial review ruling affirming the commissioner's denial of reimbursement for wages lost by the employee's spouse while transporting the employee to medical appointments, and we remand to the workers' compensation commissioner for a determination of how much interest—if any— should be assessed against the employer for any nonpayment of temporary benefits. We affirm in all other respects.

### *I. Background Facts and Proceedings.*

Julie Reynolds was employed by Algona Manor Care Center (Algona Manor) when she suffered a work injury on September 1, 2011. Reynolds filed a petition with the workers' compensation commissioner seeking compensation for her injury. Both Reynolds and Algona Manor[1] stipulated that Reynolds had not reached maximum medical improvement and that the issue of permanent partial disability was not ripe for hearing.

An arbitration hearing was held to determine Reynolds's workers' compensation rate, her entitlement to reimbursement for disputed medical

---

[1] Canon Cochran Management Services, Inc. provided third-party workers' compensation administration to Algona Manor during the relevant time period and is a party to these proceedings. In the interest of brevity, we will refer only to Algona Manor.

expenses, interest on any past-due benefits, penalty benefits, and costs. The deputy workers' compensation commissioner determined that Reynolds's weekly compensation rate was $635.05 and ordered Algona Manor to pay all past-due weekly benefits in a lump sum with interest. Algona Manor was also ordered to compensate Reynolds for certain expenses she incurred to treat her injury, as well as the cost of medical treatment for an allergic reaction Reynolds had to medication prescribed to treat her injury. The deputy commissioner denied Reynolds's claim to reimburse her husband for wages he lost while driving her to medical appointments. Finally, Algona Manor was assessed a $2500 penalty for delayed payment of benefits and was ordered to reimburse Reynolds costs in the amount of $113.60. The deputy commissioner denied both parties' applications for rehearing, and the industrial commissioner affirmed the deputy commissioner on appeal.

Both parties sought judicial review of the agency action. After a hearing, the district court entered an order affirming the commissioner's decision regarding reimbursement for unauthorized medical expenses and travel expenses, as well as his assessment of penalty benefits and costs. The court agreed with Algona Manor that the commissioner had made a mathematical error in calculating Reynolds's weekly benefit, finding the correct calculation was $633.30. Because Algona Manor had paid Reynolds this amount of weekly benefits, the court determined no interest was due for underpayment and remanded the case back to the agency to determine the credit and interest computation for any late or missing weekly benefit payments.

The district court denied Reynolds's motion pursuant to Iowa Rule of Civil Procedure 1.904(2), which sought enlarged, amended, modified, or substituted findings. Thereafter, both parties filed a timely notice of appeal.

## II. Scope and Standards of Review.

Our review of final agency action is governed by Iowa Code chapter 17A (2013). *See Des Moines Area Reg'l Transit Auth. v. Young*, 867 N.W.2d 839, 841-42 (Iowa 2015). We apply the standards set forth in section 17A.19(10) to the commissioner's decision and decide whether the district court correctly applied the law in exercising its judicial review function. *See id.* at 842. If we reach the same conclusions as the district court, we affirm. *See id.* If not, we reverse. *See id.*

We review the commissioner's interpretation of workers' compensation statutes for the correction of errors at law. *See* Iowa Code § 17A.19(10)(c) (stating the court should grant relief where the agency decision is "[b]ased upon an erroneous interpretation of a provision of law whose interpretation has not been clearly vested by a provision of law in the discretion of the agency"); *Ramirez-Trujillo v. Quality Egg, L.L.C.*, 878 N.W.2d 759, 773 (Iowa 2016) (holding the legislature did not expressly vest the workers' compensation commissioner with authority to interpret the workers' compensation statutes in chapter 85). In so doing, we will substitute our own judgment for the commissioner's interpretation of chapter 85 should we conclude the commissioner's interpretation rests on an error at law. *See Ramirez-Trujillo*, 878 N.W.2d at 771.

Because factual determinations are clearly vested in the discretion of the workers' compensation commissioner, we defer to the commissioner's findings if they are based on "substantial evidence in the record before the court when that record is viewed as a whole." *Larson Mfg. Co. v. Thorson*, 763 N.W.2d 842, 850 (Iowa 2009) (quoting Iowa Code § 17A.19(10)(f)). Substantial evidence is "the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." Iowa Code § 17A.19(10)(f)(1). Rather than questioning whether the evidence before us may support a different finding than that made by the commissioner, we ask whether the evidence supports the finding actually made. *See Larson Mfg. Co.*, 763 N.W.2d at 850.

### III. Discussion.

Algona Care advances four arguments on appeal. It challenges the reimbursement of Reynolds's medical costs and expenses, the remand to the agency to determine interest on temporary benefits, the award of penalty benefits, and the award of costs. On cross-appeal, Reynolds challenges only the denial of reimbursement of her husband's wages, which she argues is a transportation expense. We address each argument in turn.

### A. Medical Expenses.

Algona Manor contends the district court erred in concluding Reynolds was entitled to reimbursement for certain medical expenses. Specifically, Algona Manor argues Reynolds should not be reimbursed for prescription medication obtained on November 4, 2011, as well as non-prescription items purchased on

February 13, 2012, claiming these purchases were unrelated to her work injury. It also argues Reynolds is not entitled to reimbursement for a November 12, 2012 medical appointment, which Algona Manor claims was unauthorized and unrelated to her work injury.

**1. Trazodone prescription.**

Algona Manor's first claim relates to medication prescribed to Reynolds during an authorized medical appointment with Dr. Burt Bottjen on November 4, 2011. At that appointment, Reynolds complained she was having difficulty sleeping due to pain in her neck and shoulders. Dr. Bottjen prescribed Reynolds Trazodone "to help with depression and sleep." Algona Manor argues Dr. Bottjen was only authorized to treat Reynolds for a work injury to her neck and shoulder, to which the insomnia and depression were unrelated.

Substantial evidence supports the award of $10 for the Trazodone prescription. At the arbitration hearing, Reynolds testified she been experiencing difficulty sleeping when she attended her November 4, 2011 appointment with Dr. Bottjen, stating: "I was just unable to get comfortable. I mean, you get up during the night, sit in the recliner, you try to lay in bed. My favorite side to sleep on is my left side. I still cannot lay on my back or my left side." She testified she did not have "problems of this nature" with sleeping before the work injury. Dr. Bottjen's notes from the November 4, 2011 appointment confirm Reynolds's testimony. He described that Reynolds "has not been sleeping well because of her pain in her shoulders and neck from her dis[c] disease. . . . Last night she took two 10 mg of Ambien, two 10/500 Lortabs and two diazepam to help her sleep. Problem seems to be escalating here." Dr. Bottjen assessed Reynolds

with "[c]ervical dis[c] disease with significant insomnia and depression associated with this." This evidence supports a finding that Reynolds's sleep difficulties and the resulting prescription for Trazodone are related to her September 1, 2011 work injury.

Because we agree with the district court that substantial evidence supports the commissioner's finding that the Trazodone prescription was causally related to Reynolds's work injury, we affirm the reimbursement of the cost of the prescription.

### 2. Biofreeze and heating oil.

Algona Manor also argues the purchase of certain non-prescription items was unauthorized and therefore should not be reimbursed. On February 13, 2012, Reynolds purchased "roll-on Biofreeze and soothing heat blended oil" upon the recommendation of her treating physicians to treat her vocal cord dysfunction. Because there is no written prescription or recommendation in Reynolds's medical records, Algona Manor argues there is no evidence to support the award of these costs.

Reynolds testified that when she saw Dr. Beck regarding pain in her throat, "[h]e thought . . . for the shoulder the Biofreeze or the roll-on creams might at least help topically." When she purchased the Biofreeze, she also purchased the "blending oil," which she testified "at least two doctors" had recommended she try with the Biofreeze. Algona Manor argues the deputy commissioner found Reynolds's testimony not credible. However, the deputy commissioner limited its finding she lacked credibility to two instances of testimony: her testimony regarding the existence of a causal connection between her urinary tract infection

and her work injury, and a self-diagnosis of pneumonia that conflicted with her physician's diagnosis of bronchitis. With regard to the bulk of Reynolds's testimony, the deputy commissioner was silent with regard to credibility. We can infer from the award of costs for the Biofreeze and blending oil that the deputy commissioner found Reynolds's testimony on this issue to be credible.

Additionally, Reynolds's testimony that her physicians recommended the items is supported by the record. Reynolds testified she purchased the items on the same day as her appointments with Drs. Lee and Beck from Mercy Home Therapy Shop. The medical records for the appointment with Dr. Lee that day show Reynolds's vital signs were entered at 9:29 a.m. The receipt from Mercy Home Therapy Shop, which Reynolds testified is "a couple blocks away" from Dr. Beck's office, shows the items were purchased on the same day at 11:38 a.m.

Substantial evidence supports awarding Reynolds $22.36 for the cost of the Biofreeze and blending oil. Because we reach the same conclusion as the district court, we affirm the award of these non-prescription costs.

**3. November 12, 2012 medical appointment.**

Finally, Algona Manor argues Reynolds should not be reimbursed for a November 12, 2012 medical appointment with Dr. Rachel Venteicher because the visit was unauthorized and unrelated to her work injury.

The events leading up to the November 12 appointment are relevant to the determination of whether the appointment was related to the work injury and require recitation here. On November 2, 2012, Reynolds saw Dr. Michael Lampe at an authorized appointment for her work injury, where Reynolds complained

she was not feeling well, with "increased left shoulder and neck discomfort." Dr. Lampe assessed Reynolds with chronic pain, anxiety, and depression. He prescribed Wellbutrin. Thereafter, Reynolds developed a rash and swelling in her face. On November 12, 2012, she sought medical attention from Dr. Venteicher, who determined the symptoms were related to her use of Wellbutrin. In the medical notes from that appointment, Dr. Venteicher assessed Reynolds as having depression and anxiety, and she encouraged Reynolds to try "something different" than Wellbutrin, opining: "I think that it really would help how she is coping with her chronic pain issues." To that end, Dr. Venteicher prescribed Zoloft.

Substantial record evidence supports the award of $132 for the November 12, 2012 medical appointment. Reynolds had been prescribed Wellbutrin as a result of her work injury. Her reaction to the Wellbutrin necessitated the office visit on November 12, 2012. But for the work injury, Reynolds would not have had the allergic reaction to Wellbutrin. We agree with the district court's assessment that substantial evidence supports the award of costs and expenses, and accordingly, we affirm on this issue.

### B. Interest on Temporary Benefits.

Algona Manor next contends the district court erred in remanding the case back to the agency to determine interest on temporary benefits. It argues no interest should have been awarded on temporary benefits because all of Reynolds's temporary benefits—and the interest on those benefits—have already been paid. The district court concluded each payment by Algona Manor was at the correct weekly rate, and therefore, no interest was due for an underpayment.

But, the court noted the commissioner found that ten weekly payments were either late or missing.  Under section 85.30, Algona Manor is liable for interest for any payment that was made late or that was less than the full amount of compensation owed.  *See* Iowa Code § 85.30.  Algona Manor acknowledges "[b]enefits may have been delayed on a few occasions," but it paid some benefits, with interest, at a rate higher than awarded by the district court.  The district court noted the commissioner failed to make a finding as to what extent Reynolds was entitled to interest on any late payments.  We note that the district court did not require Algona Manor to pay interest.  It only remanded for a determination of whether interest is owed on any late or missing weekly benefit payments.  Under the facts presented, we find the remand appropriate.  *See Robbennolt v. Snap-On Tools Corp.,* 555 N.W.2d 229, 236 (Iowa 1996) (remanding the interest determination to the commissioner).  We affirm on this issue.

### C. Penalty Benefits.

Algona Manor also contends the district court erred in affirming the commissioner's award of $2500 in penalty benefits to Reynolds.  It argues the commissioner erroneously determined Reynolds's benefits came due on September 13, 2011 and, therefore, erroneously calculated the due dates from that date forward.  Using that calculation, the commissioner determined Algona Manor failed to timely pay benefits on ten dates.  However, in Algona Manor's view, weekly benefits did not come due until eleven days after Reynolds's benefits were to commence.  Because Reynolds did not miss work until September 6, 2011—five days after her work injury occurred—it argues her

penalty benefits did not come due until September 17, 2011. Adjusting the due dates that follow accordingly, Algona Manor argues there was no delay in payment. It also argues Reynolds's weekly benefits were not due until eleven days after the benefits were to commence.

Iowa Code section 85.30 provides:

Compensation payments shall be made each week *beginning on the eleventh day after the injury*, and each week thereafter during the period for which compensation is payable, and if not paid when due, there shall be added to the weekly compensation payments, interest at the rate provided in section 535.3[2] for court judgments and decrees.

(Emphasis added.) In other words, section 85.30 allows employers "an eleven-day grace period *following the injury* to allow an evaluation and investigation of the injury and a determination of the correct weekly compensation rate before the first compensation payment is due." *Robbennolt*, 555 N.W.2d at 235 (emphasis added). Algona Manor's claim that weekly compensation was not due until eleven days after benefits were to commence is not supported by the law.

In the alternative, Algona Manor argues it had a reasonable cause or excuse for its alleged delay in payment of benefits. It claims the benefits were delayed because it was trying to determine if Reynolds's physical complaints were related to her work injury. It further claims any short delay in the receipt of benefits was remedied within a reasonable amount of time. It further notes it paid benefits at a higher rate than determined by the district court, along with interest, which shows it was acting in good faith.

---

[2] Iowa Code section 535.3 provides that interest due under section 85.30 shall be at a rate of ten percent per year.

Penalty benefits shall be assessed against an employer that denies, delays, or terminates workers' compensation benefits "without reasonable or probable cause or excuse." Iowa Code § 86.13(4)(a). The commissioner shall award "up to fifty percent of the amount of benefits that were denied, delayed, or terminated without reasonable or probable cause or excuse." *Id.* To award penalty benefits, the commissioner must find that the employee "demonstrated a denial, delay in payment, or termination of benefits" and that the employer "failed to prove a reasonable or probable cause or excuse for the denial, delay in payment, or termination of benefits." *Id.* § 86.13(4)(b). An exception for reasonable cause, probable cause, or excuse exists if:

> (1) The excuse was preceded by a reasonable investigation and evaluation by the employer or insurance carrier into whether benefits were owed to the employee.
> (2) The results of the reasonable investigation and evaluation were the actual basis upon which the employer or insurance carrier contemporaneously relied to deny, delay payment of, or terminate benefits.
> (3) The employer or insurance carrier contemporaneously conveyed the basis for the denial, delay in payment, or termination of benefits to the employee at the time of the denial, delay, or termination of benefits.

*Id.* § 86.13(4)(c). There is no evidence Algona Manor conveyed to Reynolds the basis for the delayed payments. Accordingly, the delay in payment does not meet the criteria of section 86.13(4)(c)(3) and cannot qualify as "reasonable or probable cause or excuse." We therefore affirm the award of penalty benefits.

### D. Costs.

Finally, Algona Manor claims the district court erred in affirming the commissioner's award of $113.60 in costs to Reynolds. We review the assessment of costs at the agency level and on judicial review for an abuse of

discretion. *See id.* § 86.40; *see also Robbennolt*, 555 N.W.2d at 238. In determining whether an abuse of discretion occurred, we consider the relative success of the parties on the issues raised. *See Robbennolt*, 555 N.W.2d at 238.

The commissioner determined it was appropriate to assess the costs of the action to Algona Care because Reynolds had prevailed "on the majority of the issues." Algona Manor disputes this finding. The record shows that the commissioner's decision was a mixed result, with both parties winning some and losing some issues. Although a different conclusion could have been reached, we do not find an abuse of discretion in awarding Reynolds costs, and we affirm on this issue.

### E. Travel Expenses.

On cross-appeal, Reynolds contends the court erred by affirming the commissioner's denial of spousal wages as a transportation expense.[3] Specifically, she claims the following lost wages should be ordered reimbursed:

| Dates of Service | Providers | Round-trip Mileage | Wage Hours | @ $15.38/hour |
|---|---|---|---|---|
| 10/03/11 | Spencer Hospital | 102.82 | 8 | $123.04 |
| 11/21/11 | Dr. Beck | 107.66 | 6.5 | $ 99.97 |
| 12/01/11- 12/02/11 | Mercy Medical Center – North Iowa | 107.66 | 16 | $246.08 |
| 12/21/11 | Dr. Beck | 107.66 | 5 | $ 76.90 |
| 1/11/12 | Dr. Beck | 107.66 | 8 | $123.04 |
| 2/13/12 | Dr. Lee | 107.66 | 10 | $153.80 |
| 10/11/12 | Dr. Hoffman | 484.00 | 8 | $123.04 |
| 12/12/12 | Dr. Kuhnlein | 253.00 | 8 | $123.04 |
| 1/11/13 | Dr. Peterson | 107.66 | 8 | $123.04 |
| | | | 77.5 hrs | **$1191.95** |

---

[3] This issue arose because the uncontroverted evidence established that, due to her medical condition, Reynolds was unable to drive herself to out-of-town medical appointments.

She challenges both the law on reimbursement for such expenses as decided by our supreme court and the application of the law to the facts of her case.

Our workers' compensation statute provides that an employer shall "furnish reasonable surgical, medical, dental, osteopathic, chiropractic, podiatric, physical rehabilitation, nursing, ambulance and hospital services and supplies therefor *and shall allow reasonably necessary transportation expenses incurred for such services*." Iowa Code § 85.27(1) (emphasis added). In *Mycogen Seeds v. Sands*, 686 N.W.2d 457, 469 (Iowa 2004), our supreme court determined "that under section 85.27, an employee may be reimbursed for wages lost by the employee's spouse because of the spouse's absence from work when providing the employee with transportation to obtain authorized medical treatment" provided the transportation is "reasonably necessary." A spouse's lost wages are reimbursable in such situations "only if the manner of travel was the most economical reasonable way to be transported, the amount was reasonable as to the quality and quantity of services rendered, and the wages were actually lost by the person providing the transportation." *Mycogen Seeds*, 686 N.W.2d at 468-69 (quoting with approval *Mills v. Walden-Sparkman, Inc.*, 493 So. 2d 64, 66 (Fla. Dist. Ct. App. 1986)).

Reynolds first argues that to recover a spouse's lost wages for travel, section 85.27(1) only requires a showing that it was reasonably necessary for the spouse to provide transportation to the medical appointment, and *Mycogen Seeds* erroneously requires more. We decline the invitation to overturn supreme court precedent. *See State v. Miller*, 841 N.W.2d 583, 584 n.1 (Iowa 2014) ("Generally, it is the role of the supreme court to decide if case precedent should

no longer be followed."); *State v. Eichler*, 83 N.W.2d 576, 578 (Iowa 1957) ("If our previous holdings are to be overruled, we should ordinarily prefer to do it ourselves."); *State v. Hastings*, 466 N.W.2d 697, 700 (Iowa Ct. App. 1990) ("We are not at liberty to overturn Iowa Supreme Court precedent.").

In the alternative, Reynolds argues that she met the *Mycogen Seeds* test by demonstrating that transportation to her medical appointments by her husband was both reasonably necessary and the most economical option. Her claim hinges on Algona Manor's stipulation that her husband was entitled to be reimbursed for sixteen hours of lost wages for work he missed on December 1-2, 2012, to transport Reynolds from her home in Algona to Mason City for back surgery. She claims this stipulation functions as a concession that this mode of transportation was both reasonably necessary and the most economical option for transportation, thereby satisfying both prongs of the test articulated in *Mycogen Seeds*. Taking this logic a step further, she expands her argument to claim the stipulation is therefore a concession that her husband driving her would be the most economical way to transport her to appointments similar or longer in distance than the appointment in Mason City (a distance of 107.66 miles roundtrip). This would include medical appointments in Spencer (102.82 miles roundtrip), Ankeny (253 miles roundtrip), and Iowa City (484 miles roundtrip).

"A stipulation of fact relieves a party from the inconvenience of proving the facts in the stipulation." *Iowa Mortgage Ctr., L.L.C. v. Baccam*, 841 N.W.2d 107, 111 (Iowa 2013). We attempt to determine and give effect to the parties' intentions in construing such stipulations. *See id.* "We interpret the stipulation 'with reference to its subject matter and in light of the surrounding circumstances

and the whole record, including the state of the pleadings and issues involved.'" *Id.* (citation omitted).

Here, the parties submitted an itemized list of the medical expenses for which Reynolds sought to be reimbursed. Algona Manor marked any items it disputed on the list. If no notation was made next to an item, the payment of such medical expense was stipulated. No notation is made next to the category of "Spouse Driver's Lost Wage Hours" for December 1-2, 2012. Every other item listed in that category, however, is clearly marked as disputed. It would be unreasonable to make the leap in the logic Reynolds advocates to conclude that by stipulating to one of the costs in that category, Algona Manor was also conceding to the reasonableness of the other costs claimed in that category in spite of its clear indication to the contrary. Even assuming the stipulation was a concession that her husband driving her to Mason City on the dates in question was reasonable and the most economic means of transportation, there is no sound logic for imputing that same finding to all trips of equal or greater distance. It is not difficult to imagine scenarios in which one method of transportation is the most economical option for one journey but not for a similar journey of equal or greater distance. For instance, bus service may be unavailable between two cities due to their size or the dates and times at which travel is undertaken, while bus service may be readily available for a trip twice that distance because the trip involves a more populous city or more convenient travel times.

Finally, Reynolds argues the commissioner erred in his application of the procedure set forth in *Mycogen Seeds*. Under this procedure,

> [t]he claimant has to prove the "mode of transportation taken was reasonable and economical under the circumstances, taking into consideration the medical condition of the claimant." Additionally, the claimant must produce evidence regarding the cost of the chosen manner of travel compared to the cost of "other reasonably available means of transportation." At this point, the burden shifts to "the employer and carrier to supply evidence that a more reasonable and economical transportation method exists, of which claimant could have been aware, but chose not to take advantage of." The commissioner then weighs the evidence presented and determines how much the claimant should be reimbursed.

686 N.W.2d at 468 (citations omitted).

The commissioner found Reynolds had satisfied the burden of proving it was reasonable to have her husband transport her to her medical appointments. However, because she failed to present evidence as to the cost of other means of transportation, the commissioner held Reynolds failed to prove the cost of her husband driving her—compared to the cost of other reasonably available means of transportation—was the most economically-reasonable option. Therefore, the burden never shifted to Algona Manor to show a more economically-reasonable mode of transportation was available.

Reynolds claims that she could not introduce evidence concerning the cost of other means of transportation because there were no other means of transportation available to her. At the arbitration hearing, Reynolds testified about the availability of other forms of transportation:

> Q. Is there any bus service to Mason City from Algona?
> A. At times there's a transit bus, but you're like on it all day.
> Q. How about to Spencer? A. I know [of] nothing that goes to Spencer.
> Q. How about from Algona to Iowa City? A. I know of nothing.

Her husband testified similarly:

Q. Do you know of any other reasonable economic way of transportation that was available in the Algona area transporting your wife to Spencer, Mason City, Iowa City, and Ankeny?  A. The only other way I'm aware of is we do have a local taxi that you can pay to have them take that far, but I'm not even sure they allow that to go that far.

Reynolds argues that she presented evidence that no other reasonable means of transportation existed; therefore, the burden shifted to Algona Manor to provide evidence of a more economical means, which Algona Manor failed to do.

We agree the commissioner misapplied the holding of *Mycogen Seeds* to the facts of Reynolds's case.  Reynolds and her husband testified, in essence, that although there may have been other means of transportation available, there was no other *reasonable* means of transportation between her home in Algona and her medical appointments in Spencer, Iowa City, and Ankeny.  Accordingly, there could be no reasonable transportation that was also more economical than her husband driving her to these appointments.  The burden then shifted to Algona Manor to show a more reasonable and economical transportation method existed, of which Reynolds could have been aware but chose not to use.  Algona Manor failed to make such a showing.  Therefore, we reverse the district court on this issue.

### IV. Conclusion.

We affirm the district court's ruling on judicial review with regard to Reynolds's medical expenses, the interest on her temporary benefits, the availability of penalty benefits, and the award of costs.  We reverse the district court's ruling affirming the commissioner's denial of her claim for travel expenses.  Accordingly, we remand the case to the district court to enter

judgment consistent with this opinion and to then remand the matter to the agency for entry of a decision consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**