Kevin E. MYERS, Appellant,

v.

**F.C.A. SERVICES, INC., and Liberty Mutual Insurance Company,**
Appellees.

No. 97–1580.

Supreme Court of Iowa.

April 28, 1999.

Rehearing Denied May 25, 1999.

Mark S. Soldat, Algona, for appellant.

Tito Trevino, Fort Dodge, for appellees.

Considered by HARRIS, P.J., and CARTER, LAVORATO, NEUMAN, and CADY, JJ.

HARRIS, Justice.

An injured worker sought judicial review of an award of workers' compensation benefits, and brought this appeal from the district court ruling which affirmed the industrial commissioner. We affirm.

Petitioner Kevin Myers was employed by respondent Fiber Control Asbestos Services (FCA) as an asbestos abatement worker and foreman. His gross weekly pay was $570. Respondent Liberty Mutual Insurance Company is FCA's workers' compensation insurance carrier. Shortly after Myers began working for FCA he sustained an injury to his lower back. He thereafter sought and received workers' compensation.

Although the deputy industrial commissioner's award was significantly higher, the industrial commissioner found Myers sustained a forty-five percent industrial disability and awarded 225 weeks of permanent partial disability. Myers assigns three errors in his appeal to us from the district court's affirmance of this award.

■ I. Iowa's administrative procedure act, Iowa Code chapter 17A, governs our review. *See* Iowa Code § 86.26 (1997). As does the district court, we review contested case proceedings on error. *Stumpff v. Second Injury Fund,* 543 N.W.2d 904, 905 (Iowa 1996). We apply the standards of section 17A.19(8) to determine whether our legal conclusions are the same as those reached by the district court. *Mortimer v. Fruehauf Corp.,* 502 N.W.2d 12, 14 (Iowa 1993). Our policy is to liberally construe workers' compensation statutes in favor of the employee. *Stumpff,* 543 N.W.2d at 905.

■ An agency's findings must be supported by substantial evidence when the record is viewed as a whole. Iowa Code § 17A.19(8)(f) (1997). Evidence is substantial if a reasonable person would find it adequate to reach the conclusions reached by the agency. *Quaker Oats Co. v. Ciha,* 552 N.W.2d 143, 150 (Iowa 1996). The commissioner's decision does not lack substantial

evidence merely because inconsistent conclusions may be drawn from the same evidence. *Id.* Evidence is still substantial even though it would have supported contrary inferences. *City of Cedar Rapids v. Municipal Fire & Police Retirement Sys.,* 526 N.W.2d 284, 287 (Iowa 1995). In such a case we cannot interfere with the commissioner's findings of fact. *Second Injury Fund v. Shank,* 516 N.W.2d 808, 812 (Iowa 1994). The findings of the commissioner are akin to a jury verdict, and we broadly apply them to uphold the commissioner's decision. *Id.* The agency's decision cannot be unreasonable or involve an abuse of discretion. *Stephenson v. Furnas Elec. Co.,* 522 N.W.2d 828, 831 (Iowa 1994). Unreasonableness is defined as action in the face of evidence that leaves "no room for difference of opinion among reasonable minds, or not based on substantial evidence." *Id.*

■ The commissioner has a duty to state the evidence relied upon and detail the reasons for any conclusions. *Pitzer v. Rowley Interstate,* 507 N.W.2d 389, 392 (Iowa 1993) (citing *Catalfo v. Firestone Tire & Rubber Co.,* 213 N.W.2d 506, 510 (Iowa 1973)). This requirement is satisfied if the reviewing court is able to determine with reasonable certainty the factual basis on which the administrative officer acted. *Id.* at 393. It is understood that an administrative agency "cannot in its decision set out verbatim all testimony in a case." *Id.* "Nor, when the agency specifically refers to some of the evidence, should the losing party be able, ipso facto, to urge successfully that the agency did not weigh all the other evidence." *Id.*

■ Industrial disability measures an injured worker's lost earning capacity. *Ciha,* 552 N.W.2d at 157. Factors to be considered include the employee's functional disability, age, education, qualifications, experience, and the ability of the employee to engage in similar employment. *Id.* The focus is not solely on what the worker can or cannot do; industrial disability rests on the ability of the worker to be gainfully employed. *Id.*

II. In his first assignment Myers claims the mathematics are simply irreconcilable with a forty-five percent earning capacity

loss. He says the record was clear that, prior to his injury, his gross earnings were $12 per hour for 47.5 hours per week, and that he was paid time-and-a-half for any hours over forty hours per week. He therefore concludes his pre-injury earning capacity was at least $615 per week (40 × $12 = $480; 7.5 × $18 = $135; $480 + $135 = $615). Myers then points to the commissioner's finding that the injury permanently reduced that capacity to a range of five to seven dollars an hour. This he says would reduce his earning capacity to a maximum of $280 per week. He contends these figures produce an earning capacity between 32.5% to 45.5%. His figures suggest an earning capacity loss of 54.5% to 67.5%.

Myers finds fault with the district court for justifying the industrial commissioner's forty-five percent award by considering two factors: (1) Myers' unwillingness to participate in physical therapy which might have reduced his disability; and (2) jobs existed in metropolitan areas which he might have been able to perform. Myers then points to what he contends are inconsistencies in the industrial commissioner's ruling. He notes the commissioner found he had proceeded in good faith with vocational rehabilitation and demonstrated a willingness to become gainfully employed, yet characterized his attitude towards physical therapy as unwilling.

■■■■■ The industrial commissioner is not required to fix disability with precise accuracy. See *Klein v. Furnas Elec. Co.*, 384 N.W.2d 370, 374 (Iowa 1986). It is permissible for the reviewing court to determine the commissioner "could have" or "might have" considered certain pieces of supporting evidence. See *id.* ("In the present case, there was evidence from which the commissioner could have determined that, with proper rehabilitative therapy, petitioner could be reemployed...."). The industrial commissioner's finding of a forty-five percent industrial disability does not appear to us impossibly out of plumb with Myers' own calculation of his earning capacity loss at 54.5% to 67.5%. The record supports the findings that Myers was unwilling to undergo physical therapy, and that physical therapy might have lessened his disability. We cannot say that

mathematics disprove the commissioner's findings.

■■■■ Myers' second quarrel with the district court ruling on this issue addresses the court's reliance on the challenged finding that jobs were available to Myers in other metropolitan areas. Myers correctly points out that a worker's earning capacity is determined on the basis of that worker's community or residence. *Guyton v. Irving Jensen Co.*, 373 N.W.2d 101, 104–05 (Iowa 1985). Although the district court may have misstepped on this issue, Myers states in his brief that the commissioner did not. The "other areas" finding thus provides no basis for us to reverse on this assignment.

The assignment is without merit.

■■■■ III. In his second assignment, Myers would have us rule that Iowa Code section 85.34(2)(u) requires an award of life-expectancy benefits for all injured workers who suffer permanent partial disabilities. That section states:

In all cases of permanent partial disability other than those hereinabove described or referred to in paragraphs "a" through "t" hereof, the compensation shall be paid during the number of weeks in relation to five hundred weeks as the disability bears to the body of the injured employee as a whole.

If it is determined that an injury has produced a disability less than that specifically described in said schedule, compensation shall be paid during the lesser number of weeks of disability determined, as will not exceed a total amount equal to the same percentage proportion of said scheduled maximum compensation.

Myers thinks the commissioner misapplied section 85.34(2)(u) by multiplying the disability percentage times 500 weeks. He points to a 1973 legislative change in the statute governing permanent *total* disability which raised compensation from 500 weeks to the number of weeks left in the employee's lifetime. He suggests that, in cases like his of permanent *partial* disability, the percentage of industrial disability should be similarly multiplied by the number of weeks based on life expectancy. He argues the greater num-

ber of weeks should be used because the 500 weeks referred to in section 85.34(2)(u) represents only a portion of income lost from a permanent total disability, and the percentage of industrial disability should be viewed as a percentage of total income lost. He argues it is wrong to calculate his permanent disability benefits by multiplying a partial percentage of the total disability (forty-five percent) by another partial percentage (500 weeks). This challenge to the fairness of the statute should be addressed to the General Assembly. We are convinced the commissioner's interpretation is demanded by the clear wording of Code section 85.34(2)(u) and are not inclined to depart from this interpretation in the absence of legislative amendment.

The commissioner's interpretation of Code section 85.34(2)(u) finds support in our cases. In *Ciha*, it was determined that the claimant sustained a permanent partial industrial disability equivalent to eighty percent of the body as a whole, or 400 weeks. *Ciha*, 552 N.W.2d at 149. In *Shank*, it was found that the sixty percent impairment of the whole person for vision impairment translates into 300 weeks under the provisions of this section. *Shank*, 516 N.W.2d at 816. And in *Second Injury Fund v. Neelans*, 436 N.W.2d 355, 357 (Iowa 1989), the cumulative effect of the two scheduled injuries was equal to an industrial disability of sixty-five percent of the body as a whole which translated into 325 weeks of permanent partial disability.

We therefore reject the assignment.

■ IV. Myers' final challenge is to the commissioner's finding which fixed the date that his healing period ended: July 21, 1994. The date was selected under Iowa Code section 85.34(1). Under that statute the commissioner is required to fix the date when "it is medically indicated that significant improvement from the injury is not anticipated." Myers points out that the commissioner's "reduction" of permanent disability was in part based on the finding that he might have improved further had he participated in more therapy. Myers sees an inconsistency between the commissioner's finding (for permanent partial disability purposes) that he "might" have improved with more therapy and the finding (for healing purposes) that significant improvement from the injury is not anticipated.

■ The imagined inconsistency proceeds from what Myers describes as the commissioner's "reduction" of his permanent partial disability. The perceived reduction lies in the commissioner's disagreement with a higher amount proposed in the findings of the deputy industrial commissioner decision. The district court correctly rejected this consideration because the deputy industrial commissioner's proposed findings are not a consideration on judicial review. Only final agency action is subject to judicial review. Iowa Code § 17A.19(1).

The commissioner's finding that Myers could have helped his recovery by good-faith past participation in physical therapy did not bar her separate finding that he subsequently reached maximum medical improvement. The two findings do not relate to events in a time vacuum. The physical therapy finding looks back to what Myers could have done prior to July 21, 1994, to improve himself. The second finding merely finds that by that date Myers—perhaps partly as a result of his nonparticipation—has stopped improving physically.

Myers also strongly contends no substantial evidence supports the commissioner's finding which fixed the termination date, and he weaves a detailed argument he thinks compels rejection of this date. The commissioner found that

> on July 21, 1994, Richard M. Salib, M.D., rated [Myers'] impairment at 10 percent to 12 percent of the body as a whole. July 21, 1994, is found as the date [Myers] reached maximum medical improvement. The date issued by Dr. Salib appears to be a credible indication of maximum medical improvement as no significant improvement in [Myers'] condition had been achieved since his last visit with the University of Iowa in April of 1994.

■ The commissioner concluded that that doctor's willingness on July 21 to rate Myers' impairment was an indication that maximum medical improvement had been reached. This indication was bolstered by

the fact that, as early as April 6, 1994, some fourteen weeks prior to the challenged termination date, Myers informed his doctor he felt ready to resume light-duty work. The record supports the commissioner's termination date.

■ Much of Myers' factual recitation on this issue alludes to the extreme pain he suffered. In construing Code section 85.34(1), we have found the persistence of pain may not itself prevent a finding that the healing period is over, provided the underlying condition is stable. *Pitzer*, 507 N.W.2d at 391 (quoting 1 C. Arthur Larson, *The Law of Workmen's Compensation* § 57.12(c) (1989)). Stability is gauged in terms of industrial disability. *Id.* at 391–92. "If, however, it is not likely that further treatment of continuing pain, however soothing to the claimant, will decrease the extent of permanent industrial disability, then continued pain management should not prolong the healing." *Id.* at 392. So the fact that a claimant continues to experience pain does not necessarily extend the healing period.

We find the assignment without merit.

**AFFIRMED.**