**KEYSTONE NURSING CARE CENTER and Iowa Long Term Care Risk Management Association, Appellants,**

v.

**Billi CRADDOCK, Appellee.**

No. 04–0526.

Supreme Court of Iowa.

Sept. 30, 2005.

Rehearing Denied Nov. 8, 2005.

D. Brian Scieszinski of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellants.

Thomas M. Wertz and Matthew D. Drake, Cedar Rapids, for appellee.

TERNUS, Justice.

In this appeal, an employer and its workers' compensation insurance carrier

seek reversal of a district court judgment affirming an award of permanent partial disability benefits and penalty benefits to a former employee. We affirm the district court's decision upholding the award of disability benefits, but we reverse on the issue of penalty benefits.

## I. *Background Facts and Proceedings.*

On March 26, 1998, appellee, Billi Craddock, was employed as a certified nursing assistant (CNA) at a nursing home operated by the appellant, Keystone Nursing Care Center. Craddock testified she injured her back on that date when helping a resident into a wheelchair. A co-employee working with Craddock at the time recalled the lifting incident, but did not remember Craddock complaining of an injury or pain. Five days later Craddock completed a formal report of injury for her employer.

Upon being notified of the injury, Keystone referred Craddock to Rita Taylor, a physician assistant, for medical care. After conservative treatment was unsuccessful, Craddock saw Dr. Chad Abernathey, who eventually performed surgery on her lower back. On June 15, 1998, Dr. Abernathey released Craddock to return to work. The written release form states, "No restriction." Craddock testified, however, that Dr. Abernathey told her orally that she should not help residents with showers or whirlpools. She also said Keystone accommodated her request that she not be assigned such duties. On October 9, 1998, Dr. Abernathey gave Craddock a seven percent whole body impairment rating.

Keystone paid all of Craddock's medical expenses.[1] In addition, Keystone paid healing period benefits until Craddock returned to work on June 15, 1998, but made no voluntary permanent partial disability payments. The employer did not notify Craddock of the reason for its refusal to pay additional benefits until Craddock's counsel inquired on November 5, 1999. In its response ten days later, the employer explained that it believed Craddock had not sustained an industrial disability because she was released to full duty without restrictions.

Craddock left her employment with Keystone in September 1998, and began working for another nursing home located closer to her residence. She did not have to give baths in her new job because her new employer had an employee who bathed all residents. Nonetheless, in March 1999, Craddock sustained another on-the-job injury to her lower back. Dr. Abernathey again performed surgery, and upon releasing Craddock to return to work, imposed a thirty-pound lifting restriction.

After the second injury, Craddock obtained an independent medical examination from Dr. Ray Miller. Dr. Miller reported his opinion that Craddock had a ten percent permanent impairment for the whole person following the second surgery. He also suggested that the claimant would have benefited from a 30–pound lifting restriction after her first surgery.

At the time of the hearing, Craddock was employed as a cashier at a convenience store at an hourly wage of $9.15. (She earned $7.40 per hour when working for Keystone.) The claimant was able to do most of the required work except her back condition and restrictions prevented her from taking out the garbage.

---

1. At all relevant times, Keystone was insured by appellant, Iowa Long Term Care Risk Management Association. For the sake of simplicity we will not make separate reference to the insurer in our opinion.

Craddock filed a petition seeking workers' compensation benefits and penalty benefits on February 14, 2001. After a hearing, a deputy workers' compensation commissioner issued a decision holding the claimant had sustained a compensable injury that had resulted in a fifteen percent industrial disability. The deputy also ruled that Craddock was entitled to penalty benefits because the employer had not advised her of the reason for its decision not to pay permanent partial disability benefits at the time it stopped paying healing period benefits. The deputy rejected Craddock's argument that she was entitled to penalty benefits because there was no reasonable basis for Keystone's position that she had sustained no industrial disability.

On the employer's appeal, the commissioner affirmed the deputy's decision and adopted it as the final agency action with one exception. The commissioner held the denial of benefits was itself unreasonable because Craddock was restricted from bathing duties upon her return to work. Therefore, the commissioner stated, "it was not reasonable [for Keystone] to conclude that the injury had not caused any permanent disability."

Keystone sought judicial review in the district court. That court held there was substantial evidence to support the agency's decision that Craddock sustained an injury arising out of and in the course of her employment with Keystone, and that she suffered a fifteen percent industrial disability as a result of the injury. Relying on this court's decision in *Meyers v. Holiday Express Corp.*, 557 N.W.2d 502 (Iowa 1996), the district court also concluded the agency properly awarded penalty benefits based on Keystone's failure to advise Craddock, contemporaneously with its denial, of the reason it denied permanent disability benefits. The district court held,

however, that there was not substantial evidence to support the commissioner's alternate basis for penalty benefits: the absence of a reasonable basis to deny benefits. The court stated, "Given the fact Dr. Abernathey wrote 'no restriction' on his release form when he released [Craddock] to return to work, the issue of industrial disability was fairly debatable."

The case now comes to us on the employer's appeal. The employer challenges the commissioner's decision in four respects: (1) that Craddock sustained a compensable injury; (2) that Craddock sustained any industrial disability; (3) that Craddock was entitled to penalty benefits; and (4) the extent of penalty benefits. Because we hold the claimant is not entitled to penalty benefits, we will not address the parties' dispute over the amount of those benefits. We turn our attention instead to the other three issues.

II. *Scope of Review.*

Our review is controlled by Iowa's Administrative Procedure Act, Iowa Code chapter 17A. *Griffin Pipe Prods. Co. v. Guarino*, 663 N.W.2d 862, 864 (Iowa 2003). Under the provisions of that statute, we may grant relief from the commissioner's decision if a party's substantial rights have been prejudiced by agency action that falls within one of several enumerated grounds. Iowa Code § 17A.19(10) (2003). The grounds implicated in the present appeal include the following agency action:

> c. Based upon an erroneous interpretation of a provision of law whose interpretation has not clearly been vested by a provision of law in the discretion of the agency.
>
> . . . .
>
> f. Based upon a determination of fact clearly vested by a provision of law in the discretion of the agency that is not supported by substantial evidence in the

record before the court when that record is viewed as a whole....

*Id.* § 17A.19(10)(*c*), (*f*).[2]

 Because "factual findings regarding [an] award of benefits are within the agency's discretion, ... we are bound by the agency's findings of fact if supported by substantial evidence." *Clark v. Vicorp Restaurants, Inc.,* 696 N.W.2d 596, 604 (Iowa 2005). On the other hand, the workers' compensation commissioner has no particular power with respect to the interpretation of the workers' compensation statute. *See Mycogen Seeds v. Sands,* 686 N.W.2d 457, 464 (Iowa 2004). Therefore, we need not give the agency's interpretation of the statute any deference and are free to substitute our judgment for that of the commissioner. *Id.* Moreover, "[r]eversal is appropriate when the agency has applied an erroneous interpretation of the law." *Griffin Pipe Prods. Co.,* 663 N.W.2d at 864.

### III. *Existence of Compensable Injury.*

 The employer challenges the commissioner's finding that Craddock sustained an injury arising out of and in the course of her employment. Keystone focuses on the following discussion by the deputy:

> The greater weight of evidence supports the conclusion that the claimant has established an injury arising out of

and in the course of employment. The claimant had no record of back problems before the incident lifting the resident. She testified she felt immediate pain. Although her coworker does not corroborate the claimant's testimony that claimant complained immediately, such does not necessitate a finding that the claimant is not credible. The treating physicians have never questioned the claimant's history of this injury.

Keystone first claims "the finding that Craddock 'had no record of back problems before the incident' is in error" because "Craddock's medical records indicate that Craddock previously had undergone back x-rays in 1992." The evidence to which Keystone refers is an April 8, 1998 radiology report prepared in connection with x-rays taken after Craddock's March 1998 injury. This report states, "Comparison made to study of 11/27/92." The employer introduced no records from 1992, so the reason the prior x-rays were taken was not shown.

We do not think the mere taking of x-rays six years earlier mandates a finding that the claimant had prior back *problems.* Craddock testified that while she "probably" had general aches and pains in her back prior to her 1998 injury, she had not had any previous "back problems" or "symptoms," nor had she been treated for

---

**2.** The employer suggests in its brief that the commissioner's final decision is also reviewed under an "arbitrary, capricious, or an abuse of discretion" standard. *See* Iowa Code § 17A.19(10)(*n*). We have previously held this standard of review does not apply to a final decision in a contested case. *Finch v. Schneider Specialized Carriers, Inc.,* 700 N.W.2d 328, 332 (Iowa 2005). The only purely discretionary aspect of the decision at issue here is the amount of penalty benefits, an issue we do not reach. *See* Iowa Code § 86.13 para. 4 (allowing commissioner to award penalty of up to fifty percent of delayed or denied benefits); *Christensen v. Snap–On Tools Corp.,* 554 N.W.2d 254, 261 (Iowa 1996) (noting the amount of penalty benefits "is within the discretion of the commissioner").

Keystone also contends the commissioner failed to follow agency precedents—prior arbitration decisions—in determining whether Craddock had any industrial disability. As this court held in *Finch,* the commissioner's final decision is judged against the backdrop of the workers' compensation statute and the Iowa appellate cases interpreting it, not previous agency decisions. 700 N.W.2d at 332–33.

her back. The deputy, who assessed the witness's credibility, could have believed that Craddock's failure to recall the 1992 x-rays merely confirmed that whatever prompted the taking of those x-rays was so inconsequential or transient that it did not rise to the level of a back "problem." We do not think Craddock's testimony was so incredible that it could not "be deemed sufficient by a neutral, detached, and reasonable person," to establish the absence of prior back problems of any significance to the present dispute. *See generally* Iowa Code § 17A.19(10)(*f*)(1) (defining "substantial evidence").

■ The employer's second complaint concerns the agency's failure "to make any mention [of] or consider the fact that Craddock's medical records contradict Craddock's story that she was in a great deal of pain immediately after the alleged lifting incident." We first note the agency is not required to mention each item of evidence in its decision and explain why it found the evidence persuasive or not persuasive. *See Terwilliger v. Snap–On Tools Corp.*, 529 N.W.2d 267, 274 (Iowa 1995) (stating "the law does not require the commissioner to discuss each and every fact in the record and explain why or why not he has rejected it"). Therefore, there is no basis for reversal simply because the agency did not detail and discuss the conflicting evidence in its decision.

It is apparent from the agency's findings that it believed the claimant had experienced pain immediately after the lifting incident. To the extent the employer claims there is not substantial evidence to support the agency's finding that Craddock felt immediate pain, we reject such a contention. In the "employee accident report" completed by Craddock on March 31, 1998, she stated that she felt pain in her hip and down her right leg at the time of the incident. Taylor's notes from the

claimant's first examination on the same day state Craddock's "back didn't really hurt until about yesterday." Keystone contrasts these complaints with the claimant's testimony in her deposition and at the hearing that her back hurt from the time of the injury up to the time she saw Taylor. These more recent statements are not necessarily inconsistent with the history Craddock gave to Taylor. It is possible to interpret Craddock's statement that her "back didn't really hurt until about yesterday" to mean that Craddock's back hurt earlier, but did not *really* hurt, in other words, hurt badly, until the day before. This interpretation is reasonable because Taylor's notes also state that Craddock reported that she had been taking over-the-counter medications, but they had not helped. Even if there are inconsistencies between the medical records and Craddock's testimony with respect to the degree of pain, the medical records and the claimant's subsequent testimony both support the agency's finding that Craddock sustained some degree of pain at the time of the lifting incident. Therefore, we find no basis to reverse the commissioner's decision that Craddock sustained a compensable injury on March 26, 1998.

### V. *Industrial Disability.*

■ Relying on this court's decision in *Bearce v. FMC Corp.*, 465 N.W.2d 531 (Iowa 1991), the employer argues "there is no industrial disability from an injury that results in permanent functional impairment when the employee is able to return back to work at his or her regular occupation." Because Craddock returned to her former job after her injury, subsequently found another position as a CNA, and eventually switched to a higher-paying occupation, Keystone argues the claimant sustained no industrial disability as a matter of law. Craddock responds that the

determination of industrial disability is a multi-faceted analysis and an injured employee's ability to return to work or to earn a higher income is not determinative.

Industrial disability measures an employee's lost earning capacity. *Second Injury Fund v. Nelson*, 544 N.W.2d 258, 265 (Iowa 1995). Several factors are considered in determining such a loss. These considerations include the employee's functional impairment, age, education, intelligence, work experience, qualifications, ability to engage in similar employment, and adaptability to retraining. *Myers v. F.C.A. Servs., Inc.*, 592 N.W.2d 354, 356 (Iowa 1999). Although the employee's functional impairment is important, industrial disability does not rest solely on this factor. *Id.* The focus is "on the ability of the worker to be gainfully employed." *Id.* Obviously, then, a comparison of actual earnings before and after the injury is also significant. *See Second Injury Fund*, 544 N.W.2d at 266. But as with functional impairment, an employee's post-injury earnings are not determinative. A reduction in earning capacity can be shown even though the employee's actual earnings have increased. *St. Luke's Hosp. v. Gray*, 604 N.W.2d 646, 653 (Iowa 2000).

The agency clearly had these factors in mind when it determined that although Craddock had an industrial disability, it was "not substantial":

> The claimant has significant permanent impairment as a result of the work injury, but the injury had little impact upon the claimant's earnings. The claimant continued to work in the same job with some accommodation and was able to secure better work as a CNA without accommodation. . . .
>
> Considering all factors of industrial disability it is concluded that the claimant has sustained a 15 percent industrial disability. . . .

In addition, the commissioner viewed Craddock's restriction from bathing residents as "significant" because she was unable to perform the full range of duties customarily performed by CNAs. Consequently, the commissioner concluded one could not presume this restriction, which was a manifestation of her functional disability, "would never be detrimental to [her] ability to obtain or hold employment."

There was substantial evidence in the record to support the agency's finding that Craddock had a functional impairment and that this impairment restricted her ability to perform certain customary job duties. These facts support the commissioner's determination that the claimant sustained an industrial disability, notwithstanding the fact that her functional impairment had not yet affected her earnings.

Contrary to the employer's argument, we do not think our decision in *Bearce* requires a different result. *Bearce* does not stand for the proposition that there can be no industrial disability when the employee has returned to the same job. *Bearce* concerned the apportionment of industrial disability between a work-related injury and a prior non-work-related injury. 465 N.W.2d at 536. That factual scenario is simply not present here. In addition, the employee in *Bearce* returned to full-time employment after his first injury, earned full-time wages, and had no physical restrictions. *Id.* We held there was not substantial evidence that the first injury "was in any way disabling to [the worker] in his employment." *Id.* at 537. In view of the absence of such evidence, we concluded, it was inappropriate to assign any industrial disability to the first injury. *Id.* at 536. In the present case, the commissioner determined Craddock did have a physical restriction after her first injury. While the evidence on this issue was con-

flicting, there was substantial evidence to support the commissioner's finding that such a restriction existed.

Because the agency considered the proper factors in assessing the claimant's industrial disability and because the agency's findings with respect to those factors are supported by substantial evidence, there is no basis to reverse the commissioner's award of permanent partial disability benefits to the claimant. We turn now to a consideration of the employer's challenge to the award of penalty benefits.

## VI. *Penalty Benefits.*

The commissioner based its award of penalty benefits on two grounds: (1) the absence of a reasonable basis for the employer to conclude the claimant suffered no industrial disability; and (2) the failure of the employer to contemporaneously inform Craddock of the reason it was not paying permanent disability benefits. The district court ruled there was not substantial evidence to support the first ground, but it affirmed the penalty benefits award on the second ground. We agree with the district court that the first ground lacks evidentiary support. Contrary to the district court's ruling, however, we think the second ground lacks legal support.

■ Because penalty benefits are a creature of statute, our discussion begins with an examination of the statutory parameters for such benefits. Section 86.13 provides:

> If a delay in commencement or termination of benefits occurs without reasonable or probable cause or excuse, the industrial commissioner shall award benefits in addition to those benefits payable under this chapter or chapter 85, 85A, or 85B, up to fifty percent of the amount of benefits that were unreasonably delayed or denied.

Iowa Code § 86.13 para. 4 (emphasis added). The prerequisites for the imposition of a penalty under this statute are clear: (1) a delay in the commencement of benefits or a termination of benefits (2) "without reasonable or probable cause or excuse." *Id.* With respect to the second requirement, this court has stated:

> A reasonable cause or excuse exists if either (1) the delay was necessary for the insurer to investigate the claim or (2) the employer had a reasonable basis to contest the employee's entitlement to benefits. A "reasonable basis" for denial of the claim exists if the claim is "fairly debatable."

*Christensen v. Snap–On Tools Corp.,* 554 N.W.2d 254, 260 (Iowa 1996). With this background, we will now discuss each basis upon which the agency rested its decision to award penalty benefits.

■ A. *Lack of reasonable basis for denial.* It was undisputed in the record that Keystone did not pay permanent partial disability benefits when Craddock returned to work because it believed Craddock had not sustained any industrial disability. This belief was based on the written release provided by Dr. Abernathey that stated Craddock had no restrictions. Although the deputy concluded the issue of industrial disability was fairly debatable, the commissioner ruled "it was not reasonable to conclude that the injury had not caused any permanent disability." The commissioner's conclusion was based on Dr. Abernathey's advice to the claimant that she not bathe residents, which the commissioner viewed as a significant work restriction that could be detrimental to the claimant's ability to obtain employment in the nursing home industry.

The flaw in the commissioner's analysis is that the reasonableness of the employer's denial or termination of benefits does

not turn on whether the employer was right. The issue is whether there was a reasonable basis for the employer's position that no benefits were owing.

Here, it was undisputed the employer was informed by the claimant's treating physician that the claimant could return to her former employment without restriction. Whether this information ultimately turned out to be correct in view of Dr. Abernathey's oral instructions to Craddock is unimportant. What is determinative is whether the employer was reasonable in accepting the physician's release at face value and concluding the claimant's entitlement to industrial disability was questionable. As noted above, functional impairment and the ability to maintain one's pre-injury earning level are important factors in assessing industrial disability. We agree with the district court that in view of the employer's reasonable belief that the claimant could perform her pre-injury job without limitation, "the issue of industrial disability was fairly debatable" as a matter of law. The commissioner erred in ruling to the contrary.

■■■ B. *Failure to give notice.* The district court affirmed the commissioner's decision that Craddock was entitled to penalty benefits because Keystone did not tell her in June 1998, when it stopped paying healing period benefits, why it was denying permanent disability benefits. We disagree with this ruling because a failure to give notice is not a basis for penalty benefits. As we discussed earlier, section 86.13 is clear that a penalty is allowed only when there is no reasonable basis for the denial of a claim or the termination of benefits. *See Christensen,* 554 N.W.2d at 260 (stating "the focus is on whether timely payment of the benefits was made and if not, whether there was a reasonable excuse for the failure to make timely payment of the amount owed").

The failure of the employer to inform the injured worker of its reason for denying or terminating benefits is not an independent ground for awarding penalty benefits.

We must acknowledge, however, that the decisions of the commissioner and the district court are not without apparent support in our case law. In *Meyers v. Holiday Express Corp.,* we set forth several general principles "distilled from the penalty provisions of Iowa Code section 86.13." 557 N.W.2d at 204. Two are of interest here:

(1) If the employer has a reason for the delay *and conveys that reason to the employee contemporaneously with the beginning of the delay,* no penalty will be imposed if the reason is of such character that a reasonable fact finder could conclude that it is a "reasonable or probable cause or excuse" under Iowa Code section 86.13 . . . .

(2) *If no reason is given for the delay* or if the "reason" is not one that a reasonable fact finder could accept, we will hold that no such cause or excuse exists and remand to the commissioner for the sole purpose of assessing penalties under section 86.13.

*Id.* at 204–05 (emphasis added). The *Meyers* case did not involve a claim that the employer had not contemporaneously communicated a reason for nonpayment to the claimant, so in that respect our discussion was dicta.

Notwithstanding the gratuitous nature of our comments, we left the erroneous impression that the employer had an obligation under all circumstances to inform the employee of the reason for any delay in payment upon commencement of the delay or suffer a penalty if it did not so inform the employee. As our analysis in the present decision establishes, however, section 86.13 does not permit penalty benefits for any reason other than the absence

of a reasonable basis to delay or terminate benefits. To the extent we stated otherwise in *Meyers,* we disavow such statements.

We think the confusion in *Meyers* arose as a result of another provision in section 86.13 that requires notice to an employee under specified circumstances when benefits are terminated. Section 86.13 states in pertinent part:

> If [weekly compensation benefits are] commenced, the payments shall be terminated only when the employee has returned to work, or upon thirty days' notice stating the reason for the termination and advising the employee of the right to file a claim with the workers' compensation commissioner.

Iowa Code § 86.13 para. 2. Here, the weekly compensation benefits—healing period benefits—were terminated upon Craddock's return to work. Therefore, Keystone was not required to give Craddock thirty days' notice of the reason for termination. Consequently, its failure to give notice did not preclude it from properly terminating payments provided it had a reasonable basis to believe it owed no additional benefits.

On the other hand, when an employer terminates benefits *before* the claimant returns to work, the employer's failure to give a thirty-day notice as required by section 86.13 may result in penalty benefits. That is because in the absence of the required notice, an employer has no right to stop paying benefits. *See* Iowa Code § 86.13 para. 2 (stating "payments shall be terminated *only* . . . upon thirty days' notice . . ." (emphasis added)); *Auxier v. Woodward State Hosp.-Sch.,* 266 N.W.2d 139, 142 (Iowa 1978) (holding Due Process Clause requires pre-termination notice "except where the claimant has demonstrated recovery by returning to work"). If an employer has not given the thirty-day notice, it has no reasonable excuse for

terminating benefits, even if it has a reasonable basis to contest the employee's entitlement to benefits. So, under the limited circumstances when pre-termination notice is required, a failure to convey the reason for termination to the worker prior to terminating benefits can, in fact, result in the imposition of a penalty.

But that is not the case we have here. Neither section 86.13 nor the Due Process Clause required notice as a prerequisite for termination of benefits. Therefore, Keystone's failure to tell Craddock why it was terminating benefits cannot support the commissioner's award of a penalty under section 86.13.

### VII. *Summary and Disposition.*

We hold there is substantial evidence to support the commissioner's decision that Craddock sustained a fifteen percent industrial disability caused by her work-related injury while employed by Keystone. We agree with the district court that there is not substantial evidence to support the commissioner's decision that the issue of industrial disability was not fairly debatable. Contrary to the district court, however, we reverse the award of penalty benefits. We hold the employer's failure to notify the claimant of the reasons it would not pay permanent benefits upon its termination of healing period benefits is not grounds for penalty benefits under the workers' compensation statute. Because Craddock is not entitled to penalty benefits, we need not consider the employer's challenge to the amount of those benefits.

**DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART, AND CASE REMANDED.**

All justices concur except CADY, J., who concurs specially.

CADY, J. (specially concurring).

I concur in the result of this case, but respectfully disagree with the narrow in-

terpretation of the penalty statute given by the majority in deciding the case. Even though this interpretation leads to the correct result under these facts, it may fail to fully protect workers in other cases from employers who have a reasonable basis to deny a worker's claim but unnecessarily prolong the claim process by unreasonably failing to communicate the reason for the denial of the claim to the worker. This interpretation has also unnecessarily required us to disavow a prior case. Our principles of judicial restraint require us to strive to interpret language of our prior cases, when possible, to support, not disavow, their pronouncements. *See Kiesau v. Bantz,* 686 N.W.2d 164, 180 (Iowa 2004) (Cady, J., dissenting) (collecting cases).

The majority interprets section 86.13 to mean that penalty benefits are permitted only when the employer or insurer had "no reasonable basis for the denial of the claim." In other words, a worker cannot receive penalty benefits when the employer had a reasonable basis to deny the claim. While this interpretation appears logical and sound, it will not lead to the correct result in all circumstances. I believe the correct interpretation of section 86.13 examines whether there was a reasonable basis for the *delay* in benefits, not only whether there was a reasonable basis for the *denial* of benefits.

The salient facts that give rise to the claim for penalty benefits in this case must be kept in mind. Shortly after Craddock returned to work following her injury, Keystone asked the treating physician· if she had suffered any permanent disability. In October 1998, the physician responded that Craddock had a whole-body impairment rating of seven percent. After receiving this information, Keystone did not voluntarily pay permanent partial disability benefits. Moreover, it was not until

November 15, 1999, more than a year later, that Keystone first informed Craddock that permanent partial disability benefits would not be paid. The reason given by Keystone for not paying benefits after receiving the permanency rating was that it did not believe that Craddock suffered any industrial disability from her injury.

Under these facts, Craddock ultimately argued that Keystone had a duty to convey its denial of permanent partial disability benefits in October 1998, at the time it decided not to voluntarily pay permanent partial disability benefits, not silently sit on its hands until November 1999. In other words, Craddock claimed a penalty was required because Keystone's actions, or inactions, resulted in an unreasonable delay in the payment of benefits.

The majority resolves this claim by concluding that the delay was reasonable because Keystone had a reasonable basis to contest the claim, and the language of the penalty statute does not require an employer to give a worker notice of its reasons to deny benefits. While I agree with both propositions, I believe the penalty statute still requires us to decide whether there was a delay in the commencement of benefits and, if so, was the delay reasonable. It is not enough for the majority to conclude that Keystone had a reasonable basis to contest the benefits and that the statutory notice, *see* Iowa Code § 86.13 ("If commenced, the payments shall be terminated only when the employee has returned to work, or upon thirty days' notice stating the reason for the termination . . . ."), did not apply. This is because a delay in the payment of benefits can occur not only when there are reasonable grounds to contest a claim, but also when the employer utilizes unreasonable investigative or other stonewalling tactics that needlessly prolong the ultimate payment of benefits. We have recognized as much. *See Robbennolt v. Snap–On Tools*

*Corp.*, 555 N.W.2d 229, 237–38 (Iowa 1996) (per curiam); *see also Christensen v. Snap–On Tools Corp.*, 554 N.W.2d 254, 260 (Iowa 1996) (per curiam) ("The focus is on whether timely payment of the benefits due was made and if not, whether there was a reasonable excuse for the failure to make timely payment of the amount owed."). In other words, an employer may have a reasonable basis to contest a claim, but can still unreasonably delay the claim by engaging in delay tactics. Yet, the majority's failure to address the real issue—whether *delay* that did occur was reasonable—can only lead to the conclusion that the issue is not important when a reasonable basis for contesting benefits is found. Consequently, the approach taken by the majority gives the false impression that no penalty can be imposed against an employer when the employer is found to have had a reasonable basis to contest the claim, even when there were other unreasonable procedural reasons for the delay. Of course, the obvious problem with this approach is that it fails to distinguish between procedural and substantive reasons for delay, and it fails to recognize how procedural matters can independently be responsible for a delay. To a worker, unreasonable procedural delay is just as menacing as delay without a meritorious substantive reason.

In this case, the dispositive matter is not that the basis for Keystone's contest of benefits was reasonable, or that the statute does not require notice. Instead, it is the facts that show the delay in this case was reasonable. The delay was reasonable because Craddock never asked for permanent partial disability benefits, and Keystone did not do anything to deprive Craddock of the opportunity to make a claim for benefits earlier, or otherwise cause unreasonable delay.

I also disagree with the majority's decision to disavow *Meyers*. Craddock mis-read *Meyers* as a source of her claim that an employer must give a worker notice of the reasons for nonpayment of benefits at the time the employer first has a reason for the delay, and we are obligated to correct the confusion, not compound it. Of course, if *Meyers* had imposed such a requirement, Craddock clearly would have been entitled to penalty benefits in this case. Moreover, I can understand how *Meyers* has been read to support the proposition responsible for the confusion. However, a careful examination of the case reveals it is misplaced and is taken out of context. It is important for us to read the principles expressed in our prior cases in the context they were intended.

*Meyers* was not forging new ground by imposing a new notice requirement. Instead, as clearly expressed in the opinion, it was merely summarizing our existing principles from our prior cases. In that context, it is unfair to read it to impose a new requirement.

*Meyers* did not inject the concept of contemporaneous notice of the reason for a delay as a requirement. Rather, *Meyers* spoke an undeniable truth as expressed by the language of the penalty statute: If the reason for the denial of a claim is "fairly debatable," and the employee is notified of the reason at the beginning of the delay, no penalty can be imposed. *Meyers v. Holiday Express Corp.*, 557 N.W.2d 502, 504–05 (Iowa 1996) (citing *Robbennolt*, 555 N.W.2d at 236; *Christensen*, 554 N.W.2d at 259). Under these two circumstances, no penalty could be imposed because the delay could only be attributable to the resolution of the debatable claim. Under a statute based on unreasonable delay, prompt notice of a reasonably debatable claim could never lead to a penalty.

Placed in proper context, the pronouncements in *Meyers* did not mean to suggest

that contemporaneous notice of the reason is required to avoid a penalty. Instead, it was merely a succinct and accurate summary of those circumstances when an employer could always avoid a penalty under the statute. Consequently, there is no need to disavow our prior case. The issue in the imposition of a penalty is not whether the employer justifies and communicates the reason for the delay at the time delay begins, but whether the employer in fact had a good reason for any and all delay that occurred. A claim may be "fairly debatable" so as to excuse a delay in the payment of benefits, but that reason would not also excuse any additional delay brought on by the failure of the employer to respond to claim inquiries by the employee, or any other unreasonable delay.

Nothing in the language or purpose of the penalty statute, or our prior case law, supports the narrow interpretation given to the statute by the majority. The statute should be interpreted to protect the worker from any kind of unreasonable conduct by an employer that causes any unreasonable delay.