HECHT, Justice (dissenting).
Because I believe the definition of beneficial adopted by this court in Bell Bros. Heating & Air Conditioning v. Gwinn , 779 N.W.2d 193, 206 (Iowa 2010), has established an impractical legal standard requiring parties, witnesses, and the commissioner to engage in sheer speculation, I respectfully dissent.
In Bell Bros. we explained the general parameters controlling an employer's liability for the cost of medical care provided by an unauthorized provider in a workers' compensation case:
We do not believe [ Iowa Code section 85.27 ] can be narrowly construed to foreclose all claims by an employee for unauthorized alternative medical care solely because the care was unauthorized. Instead, the duty of the employer to furnish reasonable medical care supports all claims for care by an employee that are reasonable under the totality of the circumstances, even when the employee obtains unauthorized care, upon proof by a preponderance of the evidence that such care was reasonable and beneficial.
Id. We further explained this standard
gives the employee a chance to recover for reasonable and beneficial but unauthorized medical care when the purposes of allocating to the employer the power to select medical care are not jeopardized. This interpretation of the statute is consistent with the overall approach of section 85.27(4) to balance the control given to the employer with safeguards for the employee.
Id. at 206-07. We noted that "[t]his interpretation is ... consistent with our approach to interpret workers' compensation statutes liberally in favor of the worker."
*254 Id. at 207 (citing Myers v. F.C.A. Servs., Inc. , 592 N.W.2d 354, 356 (Iowa 1999) ).
Notably, these excerpts from Bell Bros. are consistent with how the workers' compensation commissioner had addressed claims for reimbursement for the cost of unauthorized medical treatment since 2002. Under the commissioner's interpretation of section 85.27, a claimant could obtain reimbursement for the cost of unauthorized medical expenses upon proof that they were reasonable and helpful in addressing the symptoms of a work-related injury. Haack v. Vono Hoffman Graphics , Iowa Workers' Comp. Comm'n No. 1268172, 2002 WL 32125588, at *7 (July 31, 2002) ("When there has been no abandonment of care and liability is admitted, an injured worker may be reimbursed for unauthorized care without initiating an alternate care proceeding upon a showing that the unauthorized care was successful and beneficial toward improving the employee's condition in a way that benefited the employer as well as the employee."); accord Fitzgerald v. Barker Apartments , Iowa Workers' Comp. Comm'n No. 5028294, 2009 WL 3683667, at *5-6 (Nov. 3, 2009) (same); Mechaelsen v. Electrolux , Iowa Workers' Comp. Comm'n No. 5025049, 2009 WL 5704641, at *8 (Apr. 21, 2009) (employer ordered to pay for care provided by an unauthorized surgeon where surgery "did in fact provide claimant with relief and improved his condition").
This standard requiring proof that the unauthorized medical care was helpful to the claimant generally advanced the interests of both the employer and the injured employee. Both parties had an interest in achieving prompt medical diagnosis and therapeutic treatment for work-related injuries. The employer's interest in choosing a qualified provider of medical care was naturally aligned with the interest of the employee who-wishing to be healed-was inclined, in choosing her own provider, to consult one capable of diagnosing and treating the injury.
The employer's statutory right to choose providers was protected by the burden of proof allocated to claimants seeking reimbursement for the cost of unauthorized care. Reimbursement for the cost of such care would be ordered only if the claimant proved the care was reasonable and beneficial. The reasonableness requirement provided assurance that an employer would not be required to reimburse an employee for the cost of treatment not calculated to address the claimed injury. As I have already noted, the burden of proving the unauthorized treatment was beneficial gave employees further incentive to seek treatment only from providers likely to provide services that would promote healing and recovery of their preinjury capacity. Most importantly, the standard applied prior to our decision in Bell Bros. advanced the overarching purpose of section 85.27 : to promptly provide injured employees with medical treatment for work-related injuries.
But this standard was radically changed by a single sentence in our Bell Bros. opinion. In attempting to define the word beneficial in the context of unauthorized medical care, we said, "[U]nauthorized medical care is beneficial if it provides a more favorable medical outcome than would likely have been achieved by the care authorized by the employer." Bell Bros. , 779 N.W.2d at 206. The commissioner's decision in the case now before the court reveals that this single sentence has created an unrealistic and impractical burden of proof for workers' compensation claimants. In applying the Bell Bros. definition of beneficial and denying Kelly Brewer-Strong's claim for reimbursement *255 of unauthorized medical expenses, the deputy commissioner explained,
This result seems unfair because claimant was likely to have the bilateral arm surgeries performed by either Dr. Adams or Dr. VonGillern. If the surgeries were performed by Dr. Adams, claimant would be entitled to be compensated with healing period benefits for the disputed period of time. Having had the exact same surgeries performed by Dr. VonGillern, it becomes a harsh result to deny claimant benefits simply because she cannot prove she achieved a better result from the same treatment.
But the unfairness and harshness of the Bell Bros. standard, as aptly perceived by the deputy commissioner, is only one of its most unfortunate features. The standard as applied in this case requires Brewer-Strong to prove the surgeries performed by Dr. VonGillern provided a more favorable outcome than treatment that was not provided by the authorized physician, Dr. Adams. This is a standard requiring the parties, their witnesses, and the agency to engage in pure speculation.
As the majority has noted, the employer (HNI) authorized care by Dr. Adams in September of 2012. Following an examination of Brewer-Strong in October 2012, Dr. Adams opined that Brewer-Strong should continue the conservative care (arm splints and exercises) she was then following. Brewer-Strong was at that time willing to continue the conservative approach and endure the considerable bilateral upper-extremity symptoms she was experiencing.
Nevertheless, her bilateral arm symptoms worsened in the ensuing weeks, and by May of 2013, she was willing to consider the surgical option recommended by Dr. VonGillern. The uncontroverted record reveals that the surgeries produced beneficial results relieving the bilateral arm symptoms.
Given the worsening of Brewer-Strong's symptoms between October 2012 and May 2013, the deputy commissioner astutely concluded the surgeries would have been performed by an authorized physician if they had not been performed by Dr. VonGillern.[1] But the Bell Bros. standard unrealistically and nonsensically demands proof that the successful, relief-producing surgeries performed by Dr. VonGillern were more beneficial than treatment not actually provided by an authorized physician. As a practical matter, this is an impossible standard to meet. I would therefore acknowledge that we got it wrong in Bell Bros. and overrule that standard.
Turning now to the factual record in this case, it must be noted the uncontroverted evidence established the surgeries relieved Brewer-Strong's bilateral upper-extremity symptoms so effectively that she was deemed ready to return to work without physical restrictions. I acknowledge that the beneficial outcomes of the surgeries performed by Dr. VonGillern were not permanent. But in my view, it is grossly inappropriate to attribute the duration of the beneficial outcomes to the reasonableness or quality of care provided by the unauthorized physician. Indeed, it should come as no surprise that some-but not all[2] -of Brewer-Strong's bilateral upper-extremity symptoms recurred after she was returned to the very job that caused the injuries for which the surgeries were performed. It was a job that required repetitive motion of her upper extremities- *256 grasping fabric and moving it across her workstation and through a sewing machine hundreds of times per day-as well as carrying and lifting several times per day.[3] We cannot be shocked that many of the symptoms alleviated by the successful surgeries returned when she was again exposed to that work environment. Hence, the fact that the beneficial effect of the surgeries was not of longer duration should not be attributed to the quality or reasonableness of the care provided by the unauthorized medical provider, Dr. VonGillern.
In sum, because our decision in Bell Bros. established a flawed standard requiring proof based on sheer speculation and because I believe the record does not support a finding that the surgeries performed by Dr. VonGillern were not beneficial to Brewer-Strong, I would reverse.

Notably, there is no evidence that the surgeries performed by Dr. VonGillern were not medically necessary at the time they were performed.

Brewer-Strong had a trigger finger defect prior to the surgeries that did not recur after her return to work.

At the workers' compensation hearing, HNI offered as an exhibit its official description of Brewer-Strong's job-the technical sewer position. The official description specifies the job requires, among other things, "[f]requent use of hand, arms, legs and/or back in a push/pull motion," "[c]ontinuous movement of hand, hand together with arm, or two hands to grasp, manipulate, or maneuver fabric through the sewing process," and "[c]ontinuous and repetitive use of wrists, hands, arms, and legs including bending, lifting and gripping."