# IN THE COURT OF APPEALS OF IOWA

No. 13-1441
Filed October 1, 2014

**MELINDA MAY VITZTHUM,**
          Plaintiff-Appellant/Cross-Appellee,

**vs.**

**KLM ACQUISITION CORPORATION, d/b/a ALUMA, LTD. and LIBERTY MUTUAL FIRE INSURANCE, a/k/a LM INSURANCE CORPORATION,**
          Defendant-Appellees/Cross-Appellants.
_____

          Appeal from the Iowa District Court for Polk County, Robert B. Hanson, Judge.


          Melinda Vitzthum appeals and Aluma, her employer, cross-appeals from the district court's orders regarding the Iowa Workers' Compensation Commission's final disposition on Vitzthum's compensation petition and appeal. **AFFIRMED.**


          Mark S. Soldat of Soldat & Parrish-Sams, P.L.C., West Des Moines, for appellant/cross-appellee.

          Amanda M. Phillips of Law Offices of James W. Nubel, Omaha, NE, for appellees/cross-appellants.


          Heard by Potterfield, P.J., and Tabor and Mullins, JJ.

**POTTERFIELD, P.J.**

Melinda Vitzthum appeals from the district court, which affirmed in part and remanded in part the proceedings before the Iowa Workers' Compensation Commission. The defendants, KLM Acquisition Corp.—doing business as Aluma, Ltd.—and its insurer, Liberty Mutual Fire Insurance (collectively, "Aluma") cross-appeal. Together they raise five issues: (1) the correct rate of weekly benefits to which Vitzthum is entitled; (2) whether Aluma has a reasonable or probable cause or excuse to avoid penalties for late payments; (3) whether Aluma has a reasonable or probable cause or excuse to avoid penalties for underpayments; (4) whether the district court was correct to remand for additional fact-finding; and (5) whether the assessment of arbitration and court costs below was proper.

### I. Factual and Procedural Background

Vitzthum was injured at work on June 30, 2008. Aluma agreed to pay healing period benefits, calculated the rate of those benefits at $292.65 per week, and began issuing checks based on that calculation on July 10, 2008. A regular ongoing weekly payment schedule had solidified by the end of August 2008. Vitzthum initially accepted the weekly checks without dispute.

On June 25, 2010, Vitzthum filed a petition for arbitration before the Iowa Workers' Compensation Commission. Part of the petition involved a claim for a higher weekly benefits rate—$305.29—to be applied prospectively and retroactively. Another element of the petition was a claim for additional benefits assessed as penalties against Aluma on three bases: first, for making late payments; second, for paying less than the proper benefit rate; and third, for

"underpayments resulting from payments insufficient to satisfy both the accrued interest and principal of compensation."

In its arbitration decision, the commission held that the correct weekly benefit rate was $298.39. It ordered that Aluma pay twenty-five percent of the total amount underpaid as a penalty. It denied Vitzthum's other bases for penalties. Vitzthum appealed before the commission. In the appeal decision by the designated appellate deputy commissioner, the commission held the weekly benefit rate should in fact have been $305.29 (as Vitzthum claimed) from the outset. However, it reversed the previous assignment of penalty benefits and instead ruled that Vitzthum was not entitled to penalties under any of her three theories.

Vitzthum filed for judicial review in the district court. The district court affirmed the weekly benefit rate of $305.29 and remanded for further fact-finding on the issue of penalty benefits based on the underpayment of the correct weekly rate for payments made on or after July 1, 2009, the date an amendment to the Iowa Code provision regarding penalties became effective. *See* Iowa Code § 86.13(4)(c) (2011). The district court affirmed all other aspects of the commissioner's holdings regarding penalty benefits and the calculation of the weekly benefit rate. Vitzthum appeals, asserting error in the district court's affirmance of the denial of her other claims for penalties and in the assignment of costs. Aluma cross-appeals, claiming the district court's remand for further fact-finding on the issue of penalties was improper and the commission's calculation of a weekly benefit rate of $305.29 was in error.

## II. Standard and Scope of Review

Our review of agency action is for correction of errors at law. *Finch v. Schneider Specialized Carriers, Inc.*, 700 N.W.2d 328, 330 (Iowa 2005). We apply the standards of Iowa Code section 17A.19(10) to the agency's decision and compare our conclusion with the conclusion of the district court. *Grundmeyer v. Weyerhaeuser Co.*, 649 N.W.2d 744, 748 (Iowa 2002). "If they are the same, we affirm; otherwise we reverse." *Id.*

We are "bound by [the agency's] fact-finding if it is supported by substantial evidence." *Asmus v. Waterloo Cmty. Sch. Dist.*, 722 N.W.2d 653, 657 (Iowa 2006); *see* Iowa Code § 17A.19(10)(f). Evidence is substantial when it is "the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." Iowa Code § 17A.19(10)(f)(a). "[T]he question on appeal is not whether the evidence supports a different finding than the finding made by the commissioner, but whether the evidence supports the findings actually made." *Meyer v. IBP, Inc.*, 710 N.W.2d 213, 218 (Iowa 2006).

## III. Discussion

We first address Aluma's claim on cross-appeal that the appellate deputy commissioner's calculation of benefits was erroneous. We then consider whether Vitzthum is entitled to penalty benefits on the theories she puts forward on appeal. We consider the issue on cross-appeal of the district court's limited remand on the issue of underpayment penalties simultaneously with Vitzthum's

claim that the district court's remand should be expanded. We finally consider the assessment of costs to the parties.

### A. Calculation of Benefits

Aluma asserts on cross-appeal that the district court erred by affirming the commission's holding that Vitzthum's weekly benefit rate payable is $305.29 instead of Aluma's calculated rate of $292.65 per week. Aluma rests its argument on a single case decided by the commission, which stands for the proposition that some employers allow unusual employee weekly schedules that elude sensible outcomes under the typical statutory calculations. *See Daniels v. T & L Cleaning Servs.*, File No. 1283486, 2002 WL 32125261, at *1 (Iowa Workers' Comp. Comm'n Oct. 8, 2002).

However, we agree with the appellate deputy commissioner, who stated: "I do not see much evidence in the record to show that [Aluma's] practice is all that unusual." Even though Aluma's practice of offering additional personal days may theoretically be conceptualized as offsetting employees' overtime, that offset is not so unusual that the statutory calculus does not reach a sound conclusion as to the proper weekly rate. Therefore, the usual calculation method found in Iowa Code section 85.36(6) still controls.[1]

---

[1] Iowa Code § 85.36(6) provides,

> In the case of an employee who is paid on a daily or hourly basis, or by the output of the employee, the weekly earnings shall be computed by dividing by thirteen the earnings, including shift differential pay but not including overtime or premium pay, of the employee earned in the employ of the employer in the last completed period of thirteen consecutive calendar weeks immediately preceding the injury. If the employee was absent from employment for reasons personal to the employee during part of the thirteen calendar weeks preceding the injury, the employee's weekly earnings shall be the amount the employee would have earned had the employee worked when work was available to other employees of

The appellate deputy commissioner's conclusions of law offer a sound explanation of his reasons for independently reaching the calculated amount. That evidence includes the fact that three of the thirteen weeks prior to Vitzthum's injury were non-representative weeks because she took time off. Additionally, the appellate deputy commissioner corrected calculation errors that occurred in the initial commission proceedings as a result of including premium overtime pay.

Even if his calculations were to differ from those of either or both of the parties, there remains substantial evidence in the record to support his conclusion. We affirm the district court and decline to disturb the commission's final conclusion on the proper weekly benefit rate and resulting amount past due.[2]

### B. Penalty Benefits—Reasonable or Probable Cause or Excuse

In Vitzthum's first two issues on appeal, she ascribes error to the district court's affirmance of the denial of penalty benefits. She alleges Aluma made every benefit payment past its due date and underpaid those benefits due to its erroneous benefit rate calculation. She asserts Aluma must pay penalty benefits because there was no showing of a reasonable excuse for the delay or underpayment that would insulate Aluma from mandatory penalties. On cross-appeal, Aluma asserts the district court's remand for further fact-finding regarding

---

the employer in a similar occupation. *A week which does not fairly reflect the employee's customary earnings shall be replaced by the closest previous week with earnings that fairly represent the employee's customary earnings.*

[2] The appellate commissioner held, "At the time of the hearing, the amount due was $2233.32 and interest due on that amount accrues at the rate of $.6119 per day from the date of the hearing on April 11, 2011. This will be awarded."

potential penalty benefits resulting from underpayments made on or after July 1, 2009 should be vacated.

### 1. *Applicable Law*

Iowa Code section 86.13(4)(a) provides,

> If a denial [or] a delay in payment . . . of benefits occurs without reasonable or probable cause or excuse known to the employer or insurance carrier at the time of the denial [or] delay . . . , the workers' compensation commissioner shall award [penalty] benefits . . . up to fifty percent of the amount of benefits that were denied [or] delayed . . . without reasonable or probable cause or excuse.

For penalties to be assessed, the employee must first affirmatively show that there has been a delay in payment or a denial of benefits. *Keystone Nursing Care Ctr. v. Craddock*, 705 N.W.2d 299, 307 (Iowa 2005). Then the burden shifts to the employer to prove a reasonable or probable cause or excuse for the delay. *Schadendorf v. Snap-On Tools Corp.*, 757 N.W.2d 330, 334–35 (Iowa 2008).

A reasonable or probable cause or excuse exists if either "(1) the delay was necessary for the insurer to investigate the claim or (2) the employer had a reasonable basis to contest the employee's entitlement to benefits." *IBP, Inc. v. Burress*, 779 N.W.2d 210, 222 (Iowa 2010) (quoting *Christensen v. Snap-On Tools Corp.*, 554 N.W.2d 254, 260 (Iowa 1996)). "A reasonable basis for denial of the claim exists if the claim is fairly debatable." *Id.* (quotations omitted). A claim is fairly debatable "when it is open to dispute on *any logical basis*." *Rodda v. Vermeer Mfg.*, 734 N.W.2d 480, 483 (Iowa 2007) (emphasis added). Whether

a claim is fairly debatable may be determined as a matter of law.[3] *Id.* It is irrelevant whether the employer's basis for the delay or denial is correct in the final legal analysis; rather, "[t]he issue is whether there was a reasonable basis for the employer's position that no benefits were owing." *Craddock*, 705 N.W.2d at 308.

Even if the employer's basis was not objectively reasonable, we must nevertheless determine whether it "knew, or should have known, that the basis for denying the employee's claim was unreasonable" before assigning penalties under section 86.13. *Rodda*, 734 N.W.2d at 483; *see Burton v. Hilltop Care Center*, 813 N.W.2d 250, 267 (Iowa 2012). The requirement that the employer must have known or should have known that its basis for delaying payment or underpaying was unreasonable is a by-product of Iowa courts' interpretation of section 86.13 incorporating a bad faith standard from tort law. *See City of Madrid v. Blasnitz*, 742 N.W.2d 77, 81–82 (Iowa 2007) (citing *Christensen*, 554 N.W.2d at 260). "Courts . . . do not weigh the conflicting evidence that was before the insurer; they decide whether evidence existed to justify denial of the claim." *Id.* (citations omitted). "The purpose or goal of the statute is both punishment and deterrence." *Robbennolt v. Snap-On Tools Corp.*, 555 N.W.2d 229, 237 (Iowa 1996). Our case law makes clear that the intended punishment and deterrence is for employers or insurers that attempt to escape or lessen their payments to injured workers in bad faith. *See Blasnitz*, 742 N.W.2d at 82.

---

[3] Aluma has never contested Vitzhum's entitlement to benefits. The "fairly debatable" discussion in this case therefore relates to its calculation of the amount of benefits and dates of payment.

On July 1, 2009, after Vitzthum began receiving benefits, an additional provision added to section 86.13 came into effect. Iowa Code section 86.13(4)(c) adds three statutory requirements to the employer's burden of proof when an employer or insurance carrier asserts a reasonable or probable cause or excuse:

> (1) The excuse was preceded by a reasonable investigation and evaluation by the employer or insurance carrier into whether benefits were owed to the employee.
> (2) The results of the reasonable investigation and evaluation were the actual basis upon which the employer or insurance carrier contemporaneously relied to deny [or] delay payment of . . . benefits.
> (3) The employer or insurance carrier contemporaneously conveyed the basis for the denial [or] delay in payment . . . of benefits to the employee at the time of the denial [or] delay . . . .

The payments made to Vitzthum in this case commenced before and continued beyond this statute's effective date. Because there is no contrary case law or legislative intent apparent, these additional requirements are "presumed to be prospective in [their] operation." Iowa Code § 4.5.

### 2. *Delay in Payment of Benefits*

Vitzthum asserts she has "proved without contradiction the elements necessary to prove Aluma did not make timely compensation payments." She claims Aluma must pay penalty benefits because every payment made since its second payment has been delayed.[4] Aluma, on the other hand, asserts Vitzthum has not met her initial burden of proof. It asserts the record is sufficient to show that it has made all its payments on time according to its reasonable (or at least fairly debatable) calculation of amounts due.

---

[4] Vitzthum claims "186 payment delays of 9153 days" and a total of $41,024.81 in delayed payments.

After Vitzthum's first hearing before the commission, the deputy commissioner held that there was no delay in payments because she believed Vitzthum's "request for penalty appears premised on the concept that payments are made when the check is received versus when the check is mailed." On appeal before the commission, the appellate deputy stated, "I [] do not see where defendants untimely paid its version of the weekly benefits and due dates." On judicial review, the district court's ruling on Vitzthum's assertions of delay apparently considered only the claim that the payments were delayed because they were not paid in full as a result of Aluma's miscalculations. Vitzthum's position is that there was an actual delay plus a miscalculation. We reach both issues and arrive at the same result as the district court.

There are two unique characteristics of Vitzthum's claim that made it difficult for the commission and district court to respond: (1) her unilaterally declared due dates and (2) the prospective application of benefit and interest due dates to develop *post facto* a rolling delay from each benefit period to the next.

First, Vitzthum has presented in various iterations and at various stages of the proceedings copious tabular data to express her opinion as to the due date of each payment. At no stage in the proceedings has the commission or the court expressed any formal approval or adoption of these dates in their findings of fact or conclusions of law.[5] Vitzthum claims her asserted due dates have been

---

[5] The appellate deputy commissioner did "adopt" Vitzthum's calculated benefit rate and total amount owing. Vitzthum declares, "By approving [Vitzthum's computations of the amount of benefit payments and resulting underpayment], the appeal deputy necessarily found the correctness of the due dates used in them." We find this assertion unpersuasive. The appellate deputy commissioner issued no ruling as to Vitzthum's due dates; he only concluded that the total amount due by his calculations was the same as the amount Vitzthum had put forward. Additionally, this is the same deputy that denied

calculated according to the dictates of *Robbennolt*, 555 N.W.2d at 234–36. She fails, however, to demonstrate *how* the language of *Robbennolt* mandates the precise due dates she asserted. *Robbennolt* requires "weekly compensation [to be] timely paid at the end of each compensation week." *Id.* at 235. "[W]eekly compensation payments are 'made' when they are mailed to the claimant." *Id.*

Aluma's payment schedule involved issuing a check to Vitzthum at the end of a calendar week. For example, on Friday, October 24, 2008, Aluma issued a check for the payment of benefits accrued from Monday, October 20, 2008, to Sunday, October 26, 2008. This squarely meets the description of timely payment in *Robbennolt*. *Id.*

However, according to Vitzthum's calculations each weekly payment should have accrued from Thursday of each week (e.g. October 16, 2008) to Wednesday of the following week (e.g. October 22, 2008). It is not clear from the record why Vitzthum rejects Aluma's Monday-to-Sunday weekly payment and instead demands payment on a Thursday-to-Wednesday basis.[6] Because Vitzthum has failed to support her unilaterally declared due dates with any particularized legal citation or factual assertion, we find that Aluma's payment scheme comports with *Robbennolt*.

Second, Vitzthum alleges every payment made by Aluma was delayed due to a disagreement (and possible error) regarding benefits owed in the six

delay penalty benefits because he did "not see where defendants untimely paid its version of the weekly benefits and due dates." That deputy therefore in fact *rejected* Vitzthum's purported due dates insofar as he held they do not bear upon the issue of delay penalties.

[6] In one of Vitzthum's many data tables, she calculates the weeks for which benefits are due. In her appeal brief to the commission, she includes a column entitled "7-day Week," and that column lists eight seven-day weeks and—without explanation— calculations for two five-day "weeks," a four-day "week," and a two-day "week."

weeks immediately following the injury.[7] According to Vitzthum, the asserted error created a rolling delay for each subsequent payment. For example, Aluma specifically denoted the check issued on October 24, 2008, as payment for the week of October 20, 2008. But Vitzthum asserts it was in fact a late payment for benefits that were due and unpaid on October 2, 2008. In this way, Vitzthum characterizes every payment made as a payment on benefits already owing and past due. Based on that theory, Vitzthum retroactively accrues each benefit period as a future debt rather than a contemporaneous payment from Aluma.

There is no indication Vitzthum believed this rolling late payment scheme was in effect as she received the payments. On the facts of this case, Vitzthum's "rolling delay" concept casts the impression of a litigation strategy designed to maximize potential penalty benefits. But we find no support for such a concept in our law, and indeed, Vitzthum has not cited any.[8]

On the theory presented,[9] Vitzthum has failed to meet her initial burden of proof that there was an unexcused delay in payment of benefits. Each payment Aluma made corresponds with the work week for which it was issued—the

---

[7] Vitzthum's calculations are presented in tabular data, but the design of the tables makes it difficult to compare her calculated benefits with those actually paid. The record indicates that the alleged errors in benefits payments made soon after her injury related to Vitzthum's claimed temporary partial benefits periods. Aluma issued benefit payments that coincide with all of her claimed healing period benefits.

[8] Vitzthum makes generalized gestures towards the United States rule, but that rule only applies "regarding allocation of interest when payment is made *toward retiring a judgment.*" *Christensen*, 554 N.W.2d at 261–62 (emphasis added). Vitzthum's reference to the rule may serve as a sufficient analogy for her rolling delay concept, but it is not applicable law on these facts. Aluma's benefit payments were not made toward retiring a judgment upon which interest had begun to accrue.

[9] We note Vitzthum may have had a valid claim for a delay in payment relative to temporary partial benefits owed and unpaid for the periods of July 7 to July 28, 2008, and August 2 to August 17, 2008. However, she has not presented that claim, relying instead on her rolling delay penalty theory.

payments cannot be considered back-payments toward a running balance of which neither Aluma nor Vitzthum herself had any knowledge.

Even assuming arguendo that we could recognize the rolling delay as a proper basis for penalty benefits on these facts, we note that Aluma's belief its payments were timely and complete constitutes a reasonable excuse. It was fairly debatable that the Monday-through-Friday payment system comports with the law in *Robbennolt*. Because there is substantial evidence in the record to support the district court's implicit affirmance of the commissioner's denial of these penalty benefits, we affirm.

### 3. *Underpayment of Benefits*

Vitzthum also asserts Aluma must pay penalty benefits due to the *de facto* denial of benefits owed as a result of Aluma's incorrect calculation of the correct benefit rate.[10] The commission did not award penalty benefits on this basis, finding that Aluma had demonstrated a reasonable excuse for its underpayment because it had a fairly debatable basis for its computations. The district court agreed that the basis for Aluma's computation was fairly debatable and that it therefore was not subject to penalty benefits for all benefits paid prior to the statutory amendment's effective date on July 1, 2009. The district court remanded to the commission the issue of possible penalty benefits owed on benefits paid *after* the statutory amendment went into effect, as the applicable law included additional burdens of proof on Aluma under Iowa Code section 86.13(4)(c).

---

[10] Vitzthum calculates the total amount of unpaid principal as $1832.27 by multiplying the difference between her calculated weekly benefit rate and Aluma's rate by the number of weeks paid.

On appeal, Vitzthum argues that there was *not* a fairly debatable basis for Aluma's underpayments prior to July 1, 2009, subjecting it to penalty benefits for both pre- and post-amendment underpayments. On cross appeal, Aluma argues its fairly debatable basis was sufficient to obviate Vitzthum's claim for penalty benefits even under the new statutory requirements, rendering the district court's remand to the commission unnecessary. In other words, the district court's remand suggests *some* of the benefit underpayments may be subject to penalty; Vitzthum argues that *all* of the benefit underpayments are subject to penalty; Aluma argues that *none* of the benefit underpayments are subject to penalty.

Since the commission held that Aluma's calculations were indeed erroneous, Vitzthum has satisfied her burden to demonstrate there was a denial of benefits. Our analysis, therefore, is Aluma's burden to show a reasonable or probable cause or excuse for the underpayments.

As to the pre-amendment benefits, we agree with the district court that the assessment of penalty benefits is not justified. Aluma had a reasonable basis for paying Vitzthum its calculated rate of $292.65 per week, because relevant authority could have led it to believe the thirteen weeks upon which it based its calculations formed a proper basis even though Vitzthum's actual work hours fluctuated both above and below forty hours a week with some regularity. *See Daniels*, 2002 WL 32125261, at *1 (holding where "earnings varied greatly from week to week due to available work[, t]he most appropriate method to calculate [] customary earnings was to average them over the previous 13 weeks before the injury as done by the defense").

Vitzthum misstates the applicable law when she insinuates Aluma is subject to penalties because there was not "any 'debate,' let alone a 'fair debate'" regarding its rate computation method. This is not what the law requires. The law requires that Aluma's reason for its rate computation method be "fairly *debatable*." *Burress*, 779 N.W.2d at 222. We agree with the commission and with the district court that—regardless of its ultimate correctness—Aluma had a fairly debatable basis for its rate of benefit payments made to Vitzthum before July 1, 2009. [11]

As to the post-amendment benefits, we agree with the district court that the deputy commissioner failed to analyze the three requirements of section 86.13(4)(c). Furthermore, we note the deputy failed to satisfactorily analyze the effect of the prospective nature of the 2009 amendments. The deputy applied only the pre-amendment requirements to the facts. [12]

On judicial review, the district court relied on a footnote in *Burton* to suggest the additional requirements may apply to individual post-amendment payments. *Burton*, 813 N.W.2d at 267, n.4. Aluma, however, argues the prospective nature of the amendments should relate to the date of the predicate

---

[11] Vitzthum's characterization of Aluma's reasonable or probable cause or excuse for underpayment (i.e. fairly debatable miscalculation) as an *ex post facto* excuse manufactured during litigation to avoid liability is unpersuasive. The miscalculation occurred at the outset of Aluma's payment regime in July 2009. Whether Aluma's calculations were disclosed when it began payments or during these proceedings, the excuse is not *ex post facto* because those calculations existed at the outset of the compensation period. The "excellent, recurring, and timely question" regarding legislative intent and *ex post facto* excuses that Vitzthum raises in the routing statement of her appellate brief is not actually implicated by the facts of the case before us.

[12] The appellate deputy commissioner's decision indicates some confusion as to the timing of the injury and the effective date of the amended legislation, which resulted in the application of the pre-amendment law to the post-amendment benefit payments without consideration of the effect of the amendment.

injury rather than the dates of individual payments.[13]    Under Aluma's interpretation of the amendment, the new requirements do not apply to any of the payments in this case because Vitzthum's injury occurred prior to the amendment's effective date.  The district court's interpretation of the statute, on the other hand, would alter the burden of Aluma's payment obligations mid-performance.

There are three requirements under the post-amendment law of a reasonable or probable cause or excuse for underpayment.  First, Aluma must have undertaken a "reasonable investigation" to determine what benefits it owed to Vitzthum.  Iowa Code § 86.13(4)(c)(1).  Second, Aluma must have "contemporaneously relied" on the results of that investigation as the "actual basis" for its underpayments.  *Id.* § 86.13(4)(c)(2).  Third, Aluma must have "contemporaneously conveyed the basis for the denial [] of benefits to the employee at the time of the denial . . . ."  *Id.* § 86.13(4)(c)(3).  If these requirements are applicable, the commission must make sufficient findings of fact to support them.

Because the commission's conclusions of law do not sufficiently determine the effect of the 2009 amendments and its findings of fact do not determine any attendant substantive satisfaction of the post-amendment requirements, we agree with the district court that the case must be remanded for further proceedings to interpret the effect of the 2009 amendments and for a disposition

---

[13] Aluma notes that *Burton* is factually distinguishable because every individual payment occurred prior to the effective date of the amended legislation.  *Burton*, 813 N.W.2d at 267, n.4.  However, the footnote suggests the amendments would have changed the employer's burden for payments after the effective date.  In this case, individual payments were issued both before and after the amendment went into effect.

on the matter of penalty benefits for underpayments made on or after July 1, 2009.

### C. Assignment of Costs

In compensation cases, "[a]ll costs incurred in the hearing before the commissioner shall be taxed in the discretion of the commissioner." *Id.* § 86.40. If the case is later subject to judicial review, "[t]he taxation of costs on judicial review shall be in the discretion of the court." *Id.* § 86.32. We therefore review for abuse of discretion. *Robbennolt*, 555 N.W.2d at 238.

We find that neither the commission nor the district court abused their discretion in their assignment of costs. Vitzthum contends that *Robbennolt*, 555 N.W.2d at 238, and *Solland v. Second Injury Fund of Iowa*, 786 N.W.2d 248, 249 (Iowa 2010),[14] mandate remand to the commission for recalculation of costs based on her success on the merits. However, neither case issues or references any such mandate. We find re-taxation on remand unnecessary.

It is true that, in principle, the relative success of the parties should be considered when assigning costs. *Robbennolt*, 555 N.W.2d at 238. Both the commission and the district court appropriately did so. Before the commission, Vitzthum was successful on some claims (i.e., the weekly healing period rate calculus) and unsuccessful on the others (i.e., her penalty benefit claims). The commission appropriately divided the costs equally.

---

[14] We note that the *Solland* court considered the taxation of costs pursuant to Iowa Code section 625.1 ("Costs shall be recovered by the successful against the losing party."), so its reasoning is inapposite in this case. Here, costs were taxed according to Iowa Code section 625.3 ("Where the party is successful as to a part of the party's demand, and fails as to part, unless the case is otherwise provided for, the court on rendering judgment may make an equitable apportionment of costs.").

At the district court level, her success was a very narrow remand. Because she was only partially successful, the district court has great discretion in dividing costs. *See Lake v. Schaffnit*, 406 N.W.2d 437, 442 (Iowa 1987) (holding the district court's assignment of 100% of costs to the defendant proper despite the fact that he was successful in ascribing 49% of the fault to the plaintiff); *see also* Iowa Code § 625.3 ("Where the party is successful as to a part of the party's demand, and fails as to part, . . . the court on rendering judgment may make an equitable apportionment of costs"). The district court's apportionment of costs accounts for the fact that Vitzthum's was relatively unsuccessful on judicial review; her petition was denied as to all but the narrow remand.

Neither the agency nor the district court abused their wide discretion to assign costs because neither party entirely prevailed. To reassess those costs or to allow Vitzthum to reargue these assignments on remand would be to allow her to attempt to recover costs on her multitude of rejected petitions and motions. All heretofore taxed costs are affirmed. Each party is to bear its own costs of this appeal.

## IV. Conclusion

We agree with the district court and find there is substantial evidence supporting the appellate deputy commissioner's final disposition on most issues presented. First, we find there is substantial evidence supporting the commissioner's final calculation of the proper weekly benefit rate and amount due. Second, there is substantial evidence supporting the appellate deputy commissioner's denial of penalty benefits based on a theory of delayed

payments. Third, there is substantial evidence supporting the appellate deputy commissioner's denial of penalty benefits based on a theory of underpayment for benefits paid prior to July 1, 2009. Fourth, all assignment of costs by the commission and the district court were proper and within their discretion. We affirm.

However, we find there is not yet sufficient evidence to support the appellate deputy commissioner's denial of penalty benefits based on a theory of underpayment for benefits paid on or after July 1, 2009. The commission must explicitly interpret the effect of the 2009 amendments relative to the facts of this case and then expand its findings of fact to coincide with the applicable rule of law. We affirm the district court's order to remand for further proceedings.

**AFFIRMED.**